# Exhibit A

Ali Kim, Esq. (No. 027861995)
Matthew Sava, Esq. (*pro hac vice* application forthcoming)
REID & WISE LLC
One Penn Plaza
250 West 34th Street, Suite 2015
New York, NY 10119
Phone: (212) 858-9968

*Attorneys for Plaintiffs*

| | |
|---|---|
| HUAXINTONG INTERNATIONAL INVESTMENT MANAGEMENT LIMITED and NEW ASIA (CHINA) INTERNATIONAL GROUP COMPANY LIMITED | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BERGEN COUNTY |
| Plaintiffs, v. | Docket No. C-306-21 |
| | CIVIL ACTION |
| HONGKUN USA INVESTMENT LLC, 1419 WK OWNER LLC, HK RR (NJ) LLC, and 339 RIVER ROAD HOLDINGS LLC | **VERIFIED COMPLAINT FOR AN INJUNCTION PENDING ARBITRATION** |
| Defendants, | |

Huaxintong International Investment Management Limited ("Huaxintong") and New

Asia (China) International Group Company Limited ("New Asia," and together with

Huaxintong, "Plaintiffs") sue Hongkun USA Investment LLC (the "Borrower"), 1419 WK

Owner LLC ("1419 WK Owner"), HK RR (NJ) LLC ("HK RR (NJ)"), and 339 River Road

Holdings LLC ("339 River Road Holdings," and collectively with the Borrower, 1419 WK

Owner, and HK RR (NJ), "Defendants") and allege as follows:

1

## PRELIMINARY STATEMENT[1]

1.      Plaintiffs bring this action to enjoin the Borrower and 1419 WK Owner, HK RR
(NJ), and 330 River Road Holding (collectively, the "Borrower's Subsidiaries") from selling the
New Jersey Properties (as hereinafter defined) during the pendency of a recently commenced
arbitration in Hong Kong that was brought by Plaintiffs against the Borrower.

2.      The arbitration concerns several loans that Plaintiffs made to the Borrower to
develop the New Jersey Properties.  The maturity date of each of the Loans has occurred and the
Borrower has yet to repay any portion of the original principal amount of the Loans.  It cannot
be disputed that the Borrower is in default with respect to each of the Loans.  The outstanding
indebtedness owed to Plaintiffs by the Borrower, including the principal amount of the Loans,
accrued and unpaid interest, liquidated damages, costs, and fees, is not less than $25 million.

3.      Despite the strong likelihood that Plaintiffs will prevail in the arbitration, any
arbitration award will be entirely ineffectual if the Borrower becomes judgment proof as a result
of transferring away its assets and the assets of its subsidiaries.  Astoundingly, this is *exactly*
what the Borrower is trying to do.  The Borrower is currently in the process of selling
substantially all of its assets as well as the assets of the Borrower's Subsidiaries, including the
New Jersey Properties, in order to raise funds to transfer overseas to a Chinese affiliate of the
Borrower that is facing financial distress.  However, that Chinese affiliate is *not* a subsidiary of
the Borrower (either directly or indirectly).  Clearly, any residual value on account of the equity
interests in the Borrower's Subsidiaries (including any value upon the liquidation of the assets
of the Borrower's Subsidiaries) should flow upwards to the Borrower, rather than to a third-

---

[1]     Capitalized terms used and not defined in this preliminary statement shall have the meaning
ascribed to them in the other sections of this Complaint.

party, to permit the Borrower's creditors to be paid.

4.     Therefore, the Borrower and the Borrower's Subsidiaries (who are controlled and dominated by the Borrower) are brazenly depriving Plaintiffs of any ability to recover on the anticipated arbitration award against the Borrower.  Should they succeed, Plaintiffs will face an impossible task of recovering and tracing all such transfers that will be made to a distressed Chinese entity that may further transfer such funds to its own creditors, which may include dispersed bondholders.

5.     The desire of the Borrower to sell assets to address the current distress of the Chinese affiliate also creates an incentive for the Borrower to conduct an expedited fire sale of the New Jersey Properties, which results in such assets being sold for less than it would otherwise be sold for under a normal sale process and timeline.

6.     Accordingly, Plaintiffs are in need of an injunction to avoid irreparable harm as to which no remedy at law would be adequate.

## PARTIES

7.     Plaintiff Huaxintong is a British Virgin Islands corporation whose principal place of business is in China and Hong Kong. Huaxintong is an affiliate of Plaintiff New Asia.

8.     Plaintiff New Asia is a Chinese corporation whose principal place of business is in China and Hong Kong.  New Asia is an affiliate of Huaxintong.

9.     Defendant Hongkun USA Investment is a Delaware limited liability company whose principal place of business is at 888 7th Avenue, Floor 28, New York, NY 10019.  It is registered to do business in New Jersey and maintains a place of business at 1222 Anderson Ave., Fort Lee, NJ.

10.     Defendant 1419 WK Owner is a Delaware limited liability company whose

principal place of business is at 888 7th Avenue, Floor 28, New York, NY 10019. It is
registered to do business in New Jersey and maintains a place of business at 1222 Anderson
Ave., Fort Lee, NJ.

      11.    Defendant HK RR (NJ) is a Delaware limited liability company whose principal
place of business is at 1222 Anderson Ave., Fort Lee, NJ 07024.

      12.    Defendant 339 River Road Holdings, formerly known as Edgewater Theatres
LLC, is a Delaware limited liability company registered to do business in New Jersey whose
principal place of business is at 1222 Anderson Ave., Fort Lee, NJ 07024.

## JURISDICTION AND VENUE

      13.    This Court has jurisdiction over this action under Rule 4:3-1(a)(1) because the
relief sought herein is equitable in nature.

      14.    This Court has jurisdiction over the Defendants because the controversy is related
to or arises out of Defendants' contacts with New Jersey. Specifically, Plaintiffs seek a Court
order enjoining Defendants from selling the real properties they own in New Jersey pending the
arbitration.

      15.    This Court also has jurisdiction over the Defendants because Defendants either
are registered to do business in New Jersey or maintain an office in New Jersey.

      16.    Venue is proper in this Court under Rule 4:3-2 because this action affects interests
in real property in this county, and because the Defendants either maintain registered offices in
this county or do business in this county.

## GENERAL ALLEGATIONS

**The Loans**

      17.    On or about February 20, 2019, New Asia made a loan to the Borrower in the

principal amount of $3,000,000 for a term of two years (the "February 2019 Loan"). The February 2019 Loan is evidenced by, *inter alia*, a loan agreement that was executed on February 17, 2019 (as amended, restated, or supplemented from time to time, the "February 2019 Loan Agreement"). **Exhibit A** attached hereto is a true copy of the February 2019 Loan Agreement, together with a certified English translation of its contents.

18.     On or about May 6, 2019, Huaxintong made a loan to the Borrower in the principal amount of $5,000,000 for a term of two years (the "April 2019 Loan"). The April 2019 Loan is evidenced by, *inter alia*, a loan agreement that was executed on April 30, 2019 (as amended, restated, or supplemented from time to time, the "April 2019 Loan Agreement"). **Exhibit B** attached hereto is a true copy of the April 2019 Loan Agreement, together with a certified English translation of its contents.

19.     On or about May 28, 2019, Huaxintong made a loan to the Borrower in the principal amount of $5,000,000 for an initial term of 30 days (the "May 2019 Loan"). The May 2019 Loan is evidenced by, *inter alia,* a loan agreement that was executed on May 24, 2019 (as amended, restated, or supplemented from time to time, the "May 2019 Loan Agreement"). **Exhibit C** attached hereto is a true copy of the May 2019 Loan Agreement, together with a certified English translation of its contents.

20.     On or about January 31, 2020, Huaxintong made a loan to the Borrower in the principal amount of $2,000,000 for a term of 4 months (the "January 2020 Loan"). The January 2020 Loan is evidenced by, *inter alia*, a loan agreement that was executed on January 31, 2020 (as amended, restated, or supplemented from time to time, the "January 2020 Loan Agreement"). **Exhibit D** attached hereto is a true copy of the January 2020 Loan Agreement, together with a certified English translation of its contents.

21.     The Borrower is in default with respect to each of the February 2019 Loan, the
April 2019 Loan, the May 2019 Loan, and the January 2020 Loan (collectively, the "Loans").

22.     The Borrower has not repaid any portion of the principal with respect to any of
the Loans.

23.     The Borrower also owes, *inter alia*, substantial accrued and unpaid interest,
liquidated damages, and fees that arise under each of the Loans and their respective Loan
Agreements.

24.     As of the date hereof, the amount owed to Plaintiffs by the Borrower under the
Loan Agreements is not less than $25,000,000.

**The Hong Kong Arbitration**

25.     Each of the Loan Agreements sets forth a binding arbitration clause that requires
any disputes arising out of or relating to the Loan Agreements to be resolved by the Hong Kong
International Arbitration Centre, whose decision shall be final and binding.

26.     Specifically, section 9.3 of each of the Loan Agreements set forth identical
language that provides the following:[2]

> Any dispute, controversy, disagreement or claim arising out of or relating to this
> Loan Agreement, including the validity, interpretation, performance, breach, or
> termination thereof, or any non-contractual dispute arising out of or relating to
> this Loan Agreement, shall be referred to arbitration administered by the Hong
> Kong International Arbitration Centre under the HKIAC Administered
> Arbitration Rules in force when the Notice of Arbitration is submitted. The award
> of the arbitration tribunal shall be final and binding on the parties to this Loan
> Agreement.

27.     On or about December 6, 2021, in accordance with the arbitration clause in each
of the Loan Agreements, Huaxintong and New Asia commenced arbitration proceedings in

---

[2]     Each of the Loan Agreements is in Chinese.  The quoted language in the text is an English
translation of section 9.3 of the Loan Agreements.

Hong Kong against the Borrower to recover the amounts owing under each of the Loan Agreements (the "Hong Kong Arbitration"). **Exhibits E to G** attached hereto are true copies of the three *Notices of Arbitration* Plaintiffs submitted to the Hong Kong International Arbitration Centre (without attachments), together with a certified English translation of the Chinese-language portions of the *Notices of Arbitration*.

28.     As of today, no arbitrator has been appointed or authorized or able to act.

**The Assets of the Borrower and the Borrower's Subsidiaries**

29.     The Borrower indirectly owns all the equity interests in each of the other Defendants (*i.e.*, the Borrower's Subsidiaries).

30.     Defendants 1419 WK Owner, HK RR (NJ), and 339 River Road Holdings each own various interests in real property.

31.     Defendant 1419 WK Owner is the owner of (i) the real property located at 1400 Avenue at Port Imperial, Weehawken Township, Hudson County, New Jersey, and (ii) the real property located at 1900 Avenue at Port Imperial, Weehawken Township, Hudson County, New Jersey (collectively, the "Weehawken Properties").

32.     Defendant HK RR (NJ) holds a first priority mortgage on the real property located at 115-145 River Road, Edgewater, Bergen County, New Jersey (the "115-45 Property").

33.     Upon information and belief, HK RR (NJ) has a contractual right to acquire fee simple title to the 115-145 Property.

34.     Defendant 339 River Road Holdings owns the real property located at 339 River Road, Edgewater, Bergen County, New Jersey (the "339 Property," and collectively with the Weehawken Properties, and the 114-45 Property, the "New Jersey Properties").

**Alter Ego of the Borrower and the Borrower's Subsidiaries**

35.     The Borrower controls, dominates, and uses each of the Borrower's Subsidiaries as a mere instrumentality.

36.     All Defendants were controlled by Bin Zhao, and are now controlled by Weihao Zhao after Bin Zhao was detained in China as set forth below.

37.     Each of the Borrower's Subsidiaries are single purpose entities with no independent business operations.

38.     Each of the Borrower's Subsidiaries are used by the Borrower to merely hold title to the New Jersey Properties.

39.     Upon information and belief, neither the Borrower nor the Borrower's Subsidiaries own any assets outside of the United States.

40.     Upon information and belief, the interests in the New Jersey Properties constitute substantially all of the assets owned, directly or indirectly, by the Defendants.

**The Borrower's Intent to Sell and Transfer the New Jersey Properties**

41.     The Borrower intends to sell substantially all of the assets of the Defendants.

42.     Starting in October 2020, Xinjun Zhang, who is the legal affairs manager of the Plaintiffs, met from time to time with Ruiqi Fu, a representative of the Borrower, to demand payment of all amounts owing under the Loans.

43.     Ruiqi Fu told Xinjun Zhang that the ultimate owner and controller of the Borrower, Bin Zhao, has been detained in China in connection with a criminal proceeding, and the Borrower is currently under the control of Weihao Zhao, the son of Bin Zhao.

44.     During one meeting, Ruiqi Fu told Xinjun Zhang that the Borrower is planning to sell the New Jersey Properties.

45.     The use of the sale proceeds from the sale of the New Jersey Properties to pay off the Loans is required because (i) the Borrower's Subsidiaries are the alter ego of the Borrower, (ii) the Loans were used to develop the New Jersey Properties, and (iii) the Borrower is legally entitled to receive the residual value that arises from the equity interests that the Borrower owns in its own subsidiaries after the liabilities of the subsidiaries have been satisfied.  If the sale proceeds were instead transferred away, the Borrower will never realize the value of the equity interests in its own subsidiaries, which will detrimentally affect the ability of the Borrower's creditors to be paid.

46.     On or about August 31, 2021, Ruiqi Fu sent to Xinjun Zhang a pitchbook prepared by real estate broker Jones Lang LaSalle ("JLL") for the specific purpose of selling the properties owned by the Borrower's Subsidiaries.  Ruiqi Fu told Xinjun Zhang that the Borrower retained JLL to sell the New Jersey Properties.

47.     In or about November 2021, Ruiqi Fu told Xinjun Zhang again that the Borrower is selling the New Jersey Properties.  However, when Xinjun Zhang asked Ruiqi Fu to confirm that the sale proceeds would be used to pay the amounts owed under the Loans, Ruiqi Fu would not provide this assurance and stated that the proceeds may not be used to pay the debts the Borrower owes to Plaintiffs.

48.     Ruiqi Fu explained to Xinjun Zhang that the Borrower's Chinese affiliate, Beijing Hongkun Weiye Real Estate Development Co., Ltd. ("Beijing Hongkun"), which is also owned and controlled by Bin Zhao, is experiencing financial distress. Ruiqi Fu told Xinjun Zhang that Beijing Hongkun had defaulted on its privately issued debt, and that Beijing Hongkun was about to default on its publicly issued bonds. Ruiqi Fu also told Xinjun Zhang that Beijing Hongkun was under great financial pressure.

49.     Despite the Borrower's obligation to use the sale proceeds of the New Jersey

Properties to pay the amounts owed to Plaintiffs as a creditor under the Loans, the Borrower

thus made it clear through Ruiqi Fu's statements that the proceeds will in all likelihood be

transferred to, and used to bail out, the Borrower's Chinese affiliate (*i.e.*, Beijing Hongkun).

50.     Importantly, Beijing Hongkun is not a subsidiary (either directly or indirectly) of

the Borrower.  As such, the sale proceeds arising from the liquidation of the assets of the

Borrower's Subsidiaries should be distributed to the Borrower (rather than Beijing Hongkun) so

that the creditors of the Borrower can be paid.

51.     If the New Jersey Properties are sold and the proceeds transferred to Beijing

Hongkun, as the Borrower has indicated it will do, Plaintiffs stands to be irreparably harmed.

The Borrower will have succeeded in avoiding an obligation of more than $25 million owed to

Plaintiffs.

**FIRST COUNT**
**INJUNCTION PENDING THE HONG KONG ARBITRATION**
**(AGAINST ALL DEFENDANTS)**

52.     Plaintiffs hereby incorporate all of the foregoing and subsequent paragraphs as if

alleged herein.

53.     The Superior Court "is fully empowered to so act in an appropriate case to protect

the *status quo* while another tribunal considers the merits of the parties' disputes." *Steiger v.*

*Armellino*, 315 N.J. Super. 176, 183–84, 716 A.2d 1216, 1219–20 (Ch. Div. 1998); *see also,*

*Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806,812 (3d Cir.1989) (a court of equity

possesses the authority to enter injunctive relief pending the institution of arbitration

proceedings).

54.     Under N.J.S.A. 2A:23B-8[a], "[b]efore an arbitrator is appointed and is

authorized and able to act, the court, in such summary action upon application of a party to an arbitration proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitration proceeding to the same extent and pursuant to the same conditions as if the controversy were the subject of a civil action." N.J.S.A. 2A:23B-8[a].

55.    Rule 4:67-2(a) requires a summary action to be commenced by filing an order to show cause and verified complaint. Rule 4:67-2(a).

56.    The party seeking temporary injunctive relief must show that he or she has "a reasonable probability of success on the merits; that a balancing of the equities and hardships favors injunctive relief; that the movant has no adequate remedy at law and that the irreparable injury to be suffered in the absence of the injunctive relief is substantial and imminent; and that the public interest will not be harmed." *Waste Mgmt. v. Union County Utils. Authority*, 399 N.J.Super. 508, 519–520, 945 A.2d 73 (App. Div. 2008) (citing *Crowe v. De Gioia*, 90 N.J. 126, 132-34, 447 A.2d 173 (1982)); *Zon. Bd. of Adj. v. Serv. Elec. Cable T.V.*, 198 N.J.Super. 370, 379, 487 A.2d 331 (App. Div. 1985).

57.    Plaintiffs are likely to succeed on the underlying merits of their claims in the Hong Kong Arbitration.

    a.  Plaintiffs' claims against the Borrower arise under the Loan Agreements.

    b.  The maturity date for each of the Loans has already occurred.

    c.  The Borrower has not repaid any of the outstanding principal, accrued and outstanding interest, liquidated damages, fees, or costs.

58.    After obtaining an arbitration award against the Borrower, Plaintiffs are likely to succeed in the judgment enforcement proceeding on piercing corporate veil and extending liabilities to the Borrower's Subsidiaries.

59.     Generally, a court may pierce the corporate veil "where there is fraud or where [the corporation] is in fact a mere instrumentality or alter ego of its owner." *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (quoting *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)).

60.     In New Jersey, "[t]he general standard applied by the court in considering the request to pierce the veil [is] whether '(1) the entity was 'dominated' by the individual owner, and (2) . . . adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law.'" *Ten West Condo. Owners' Ass'n, Inc. v. LRG Realty, LLC*, 2017 N.J. Super. Unpub. LEXIS 1780, at *15 (App. Div. 2017) (quoting *Verni ex rel. Burnstein v. Harry M.Stevens, Inc.*, 387 N.J. Super. 160, 199–200 (App. Div. 2006) (citing *State Dep't of Environ. Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (1983))).

61.     "To establish a fraud, an injustice, or other circumvention of the law, the party seeking to pierce the corporate veil must show the entity had 'no independent business of its own,' and the owner deliberately undercapitalized the entity, thereby rendering it judgment-proof." *Ten West Condo. Owners' Ass'n, Inc. v. LRG Realty, LLC*, 2017 N.J. Super. Unpub. LEXIS 1780, at *16 (App. Div. 2017).

62.     Here, the Borrower and the Borrower's Subsidiaries were dominated by the same individual owner, Bin Zhao, and after Bin Zhao was detained in China, they are now dominated by his son, Weihao Zhao. The Borrower's Subsidiaries are single purpose entities with no independent business operations, and are mere instrumentalities of the Borrower. The Borrower, who is in default under the Loan Agreements with the Plaintiffs, is going to sell its subsidiaries' assets and use the sale proceeds to bail out its Chinese affiliate, Beijing Hongkun, rendering the Borrower judgment proof.

63.     Plaintiffs will be irreparably harmed without an injunction pending the Hong Kong Arbitration.

    a.  Without an injunction, any arbitration award in favor of Plaintiffs will be ineffectual if the Borrower transfers away its assets and thereby becomes judgment proof.

    b.  The Borrower is seeking to sell substantially all of its assets and the assets of its subsidiaries.

    c.  The Borrower indicated its intent to use the sale proceeds to bail out its Chinese affiliate, Beijing Hongkun, which is not a subsidiary (either directly or indirectly) of the Borrower.

    d.  The desire of the Borrower to transfer assets to satisfy the current distress of Beijing Hongkun also creates an incentive for the Borrower to conduct an expedited fire sale of the New Jersey Properties, which results in such assets being sold for less than it would otherwise be sold for under a normal sale process and timeline.

64.     The balance of equities show that the harm to Plaintiffs absent an injunction is greater than the harm to Defendants upon the issuance of the injunction.

    a.  If the Borrower succeeds in transferring the assets of the Borrower to pay the debt obligations of Beijing Hongkun, who has issued publicly traded bonds, Plaintiffs will not have any realistic possibility of recovering or tracing those funds.

    b.  The Borrower would not be harmed by an injunction because the Borrower has no right to transfer its assets out of the reach of the Borrower's creditors.

    c.    The injunction seeks to simply maintain the status quo by preventing the Borrower and its subsidiaries from liquidating substantially all of their assets and transferring such assets out of the reach of the Borrower's creditors.

65.    The requested injunction does not harm the public interest. Rather, the public interest would be advanced by a court in the United States enjoining a transfer of funds by a debtor (*i.e.*, the Borrower) to a foreign country when such transfer is intended to delay, hinder, and inhibit the debtor's creditors from being repaid on legitimate debts incurred by the debtor.

66.    There is no other complete and adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them, as follows:

    1)    Defendants Hongkun USA Investment LLC, 1419 WK Owner LLC, 339 River Road Holding LLC, and HK RR (NJ) LLC, their directors, officers, managers, employees, representatives, agents, and anyone acting under their authority, direction or control, are enjoined during the pendency of the arbitration proceedings in Hong Kong that are currently being administered by the Hong Kong International Arbitration Centre, styled as *New Asia (China) International Group v. Hongkun USA Investment LLC, et. al.*, Case No. HKIAC/A21239; *Huaxintong International Investment Management Limited v. Hongkun USA Investment LLC, et. al.*, Case No. HKIAC/A21240; and *Huaxintong International Investment Management Limited v. Hongkun USA Investment LLC, et. al.*, Case No. HKIAC/A21238, and upon completion of the arbitration proceedings until such time as this Court on application determines good cause exists to vacate the

injunction, or until Plaintiffs voluntarily dismiss this action thereby dissolving any injunction, from selling, liquidating, transferring or otherwise disposing their interests (which, for the avoidance of doubt, includes any mortgage on real property), or transferring the proceeds of any disposition of their interests, in the following real properties:

      a.     1400 Avenue at Port Imperial, Weehawken Township, Hudson County, NJ;

      b.     1900 Avenue at Port Imperial, Weehawken Township, Hudson County, NJ;

      c.     339 River Road, Bergen County, NJ; and

      d.     115-145 River Road, Bergen County, NJ.

2)     Such other relief as this Court deems just and proper.

Dated: December 17, 2021

                                    Respectfully submitted,

                                      By:    */s/ Ali Kim*

                                      Ali Kim (No. 027861995)
                                      Mathew Sava (*pro hac vice*
                                      application forthcoming)
                                      REID & WISE LLC
                                      One Penn Plaza, Suite 2015
                                      New York, New York 10119
                                      Tel: (212) 858-9968

                                      *Attorneys for Plaintiffs*

**CERTIFICATION PURSUANT TO RULES 4:5-1 AND 1:38-7**

Plaintiffs hereby certify pursuant to R. 4:5-1 that, except as stated in the foregoing complaint, there are no other civil proceedings or arbitrations either pending or contemplated with respect to the matter in controversy herein and no other parties who should be joined to this action. Plaintiffs further certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents accordance with Rule 1:38-7(b).

Dated: December 17, 2021

_/s/ Ali Kim_____
Ali Kim, Esq.

<u>**VERIFICATION**</u>

I am the legal affairs manager of New Asia (China) International Group Company Limited and Huaxintong International Investment Management Limited, the plaintiffs in the above captioned action. I have read the foregoing complaint and certify that the factual statements made therein are true to the best of my knowledge and belief.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Xinjun Zhang
XINJUN ZHANG

Dated: December 17, 2021

# EXHIBIT A



**HONGKUN**
USA

借款合同

甲方（出借人）：新亚（中国）国际集团有限公司 （New Asia (China) International

Group Company Limited）

地址：香港中环皇后大道中9号11楼1102-3室

联系电话：13806001722 / 010-82250338


乙方（借款人）：Hongkun USA Investment LLC

地址: 888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885


丙方（担保人一）：北京鸿坤伟业房地产开发有限公司

地址: 北京大兴区欣荣北大街45号1号楼1层室

联系电话：010-60240288


丁方（担保人二）：赵彬

地址: 北京大兴区欣荣北大街45号1号楼1层室

联系电话：010-60240288

1



# HONGKUN
### USA

戊方（担保人三）: Hongkun USA Real Estate Holdings LLC

地址: 888 7th Avenue, Floor 28, New York, NY 10019

联系电话: (212) 257-8885

（丙方、丁方及戊方三方合称为"担保方"）

鉴于:

甲方为一家于香港注册的有限公司·乙方及戊方为一家于美国注册的有限公司·丙方为一家于中国注册的有限公司·

本合同各方根据香港法律、法规规定·经平等、友好协商·就乙方向甲方借款、担保方提供担保事宜达成协议如下:

**第 1 条 借款金额**: 300 万元美金·（下称"借款"）

**第 2 条 借款期限**:

2.1 借款期限为两年；乙方可选择在两年借款到期前 30 天通知甲方并取得甲方同意后将贷款期限再延期一年·

2.2 借款期限自借款实际交付之日起计算·借款从甲方名下的账户划转至乙方收款账户视为借款实际交付·预期借款起始日将为 2019 年 2 月 20 日·

**第 3 条 借款利率及利息**

3.1 借款利率为年利率10%, 每年（借款自划转至乙方账户之日起每满365天为1个年度·

2



# HONGKUN
### USA

即派息日）按照年利率10%派息一次; 在贷款到期(含提前到期)之日，Hongkun USA Investment LLC 将一次性再次派发借款期间全部借款每年年化率为 8%的应计利息。自乙方收到借款的当日起计息；借款满一年后如乙方提前归还借款，利息按借款实际使用期限计算；本协议项下借款利息以每年365 日为基数，从借款本金划付日起按资金余额和占用天数计收。

3.2 结息方式：乙方应于借款到期之日一次性将利息和本金支付至本协议第 4 条约定的甲方账户内。

**第 4 条 借款支付与偿还**

4.1 甲方应于 2019 年 2 月 20 日前将借款本金一次性足额支付到如下账户内。甲方将借款支付到如下帐户后即完成借款交付：

   a) 账户名（Account Name）: Hongkun USA Real Estate Holdings LLC

   b) 开户行（Bank Name）: Citibank, N.A.

   c) 开户行地址（Bank Address）: 2071 Lemoine Ave, Fort Lee, NJ, 07024

   d) 开户人地址（Business Address）: 1222 Anderson Ave, Fort Lee, NJ, 07024

   e) 账户号码（Account Number）: ███████

   f) ABA 号码（Routing Number）: 021272655

   g) Swift Code : CITIUS33

4.2 若乙方发生任何下述事件或基于任何其他原因，甲方有权在发生下述事件后的任何时间或于任何时间宣告全部借款立即到期，并书面要求乙方及担保方立即将借款的任何部份或全部实时清偿：

3



**HONGKUN**
USA

(a)　乙方没有按时偿付借款或其任何部份；

(b)　乙方无能力履行清偿借款或偿还其他债务的责任；

(c)　乙方在本合同第七条或乙方或其他人士在根据本合同须签订的文件中所作的任何陈述或保证有任何失实、错误或误导；

(d)　乙方对第三者的借款、担保、赔偿或其他债项，因违约而须提前偿付或到期而不能如期偿付；

(e)　乙方申请或通过决议或被人申请或因法院或政府机关的命令清盘、破产、指定清盘人、接管人或信托人等人去处理其所有或大部分财产或被法院下令监管财产；

(f)　乙方受司法或行政部门的判决、裁定或处罚决定所制裁，对其不动产、物业或财产（包括应收款）等有不利的影响，或有受上述制裁的威胁，而该等威胁又不能在发生后三十（30）天内圆满解除；

(g)　乙方的任何财产被扣押、查封或没收或有被扣押、查封或没收的威胁；

(h)　乙方的全部财产或任何重要关键部份遭受或可能遭受没收、征用、强制性收购（不论是否有价收购）、或受到损毁破坏，以致甲方认为乙方履行其在本合同下的责任之能力已受到影响；

(i)　本合同或根据本合同须签订的文件所述的责任在适用法律规范下变得不合法或不可能继续履行；

(j)　乙方因其业务经营前景或其所拥有财产出现不利变化而严重影响其履行本合同所负偿还责任的能力；

4



**HONGKUN**
USA

(k)　乙方违反本合同(或根据本合同须签订的其他文件)的约定。

4.3 借款期限届满之日，乙方应将借款本金和应付的利息一次性足额支付至甲方指定的账户内。甲方收到全额款项即视为借款还清。

**第 5 条 甲方义务**

5.1 对于在签订、履行本合同的过程中所知悉的乙方的所有信息和资料均应当予以保密；如甲方和乙方认为有必要的，双方应当签订一份保密协议，保密协议中乙方应当遵守的义务构成本合同第 8 条的组成部分。

5.2 甲方应及时足额将借款资金支付至本协议第 4 条约定的乙方收款账户。

**第 6 条 乙方义务**

6.1 乙方对在签订、履行本合同的过程中所知悉的甲方的所有信息和资料均应当予以保密；

6.2 借款到期，乙方应按合同约定向甲方偿还借款。

**第 7 条 陈述与保证**

7.1 甲方的陈述与保证

　7.1.1)　甲方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格；

　7.1.2)　甲方已获得签署本合同所必须的内部审批或授权，不违反适用于甲方的法律、法规、政策和公司章程等规定。

7.2 乙方的陈述与保证

　7.2.1)　乙方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本协议的合法主体资格。

　7.2.2)　乙方已获得签署本合同所必须的内部授权，不违反适用于乙方的法律、法规、政策和公司章程等规定。

**HONGKUN**

U S A

7.2.3)   乙方保证本合同、根据本合同须签立的文件之签署和履行，均不会：

(i)   抵触或违反任何对有关乙方有约束力的法律、命令、协议、章程或任何法院、行政和政府机关颁布的判决、禁令、命令、决定和裁决；及

(ii) 超越有关担保方的保证或担保权限。

7.2.4)   在任何法院、法庭、仲裁庭或政府机关均没有任何以乙方为当事人或针对其的资产之诉讼、仲裁或行政裁判程序已展开；同时，亦不存在该等诉讼、仲裁或行政裁判程序可能展开的威胁之重要事实或情况。

7.2.5)   没有任何令或旨在令乙方破产、清盘、解散的法庭命令、申请、法律程序或决议已颁发、提出、展开或通过。

7.2.6)   乙方向甲方提供关于乙方的所有数据均真实可靠、完全、准确、没有误导成份。

7.3      丙方的陈述与保证

7.3.1) 丙方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.3.2) 丙方已获得签署本合同所必须的内部审批或授权，不违反适用于丙方的法律、法规、政策和公司章程等规定。

7.4      戊方的陈述与保证

7.4.1) 戊方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.4.2) 戊方已获得签署本合同所必须的内部审批或授权，不违反适用于戊方的法律、法规、政策和公司章程等规定。

**第 8 条 违约责任**

8.1 因一方违约导致另一方采取仲裁方式实现权利的，违约方应承担守约方为此支付的实现权利的费用（包括但不限于律师费、差旅费等）。

6

**HONGKUN**
USA

8.2　一旦逾期，乙方须按照全部应付未付金额按年利率36%的标准向甲方支付违约金，至全部归还完毕甲方本息之日为止

**第 9 条 争议解决**

9.1 本合同未尽事宜以及履行本合同所产生的争议，由甲乙双方协商解决，协商不成，通过仲裁解决及处理。

9.2 本合同适用香港法律。

9.3凡因本合同所引起的或与之相关的任何争议、纠纷、分歧或索赔，包括合同的效力、解释、履行、违反或终止，或因本合同引起的或与之相关的任何非合同性争议，均应提交由香港国际仲裁中心，并按照提交仲裁时有效的《香港国际仲裁中心机构仲裁规则》仲裁，仲裁裁决对本合同各方有约束力，并为终局决定。

**第 10 条 合同的生效、变更与解除**

10.1　本合同自各方加盖公司公章且双方法定代表人或其委托代理人签字之日起生效；

10.2　合同生效后，除本合同已有约定以外，任何一方均不得擅自变更或解除本合同；如确需变更或解除本合同，应经各方协商一致，并达成书面协议。

**第 11 条 担保条款**

11.1 就乙方因本合同条款而引致乙方应偿还甲方的借款、债务、利息欠款和相关费用支出，担保方（即丙方、丁方和戊方）共同地及个别地承担无限连带担保责任。丙方承诺及同意在甲方发出要求时将其相应于该等债务金额的资产抵押给甲方作为偿还借款的担保。

11.2 如乙方未能根据本合同偿还借款，担保方兹共同地及个别地承诺会应甲方要求向甲

7



方偿还(金额不含任何抵销权，并且不负担任何性质的税项的扣减)乙方尚欠的借款本息及其他根据本合同引起的债务或费用。

**第 12 条 其他**

12.1 各方均保证本合同所载明的通讯地址（包括住所地）、联系方式（包括联系电话、传真、Email 等）真实有效，可以作为对方通知香港国际仲裁中心送达法律文书的确认地址，因载明的地址有误或未及时告知变更后的地址，导致相关材料未能实际被接收的，自材料邮寄后第三日视为送达之日。

12.2 本合同一式伍份，合同各方各执壹份。



**HONGKUN**
U S A

本页无正文，为《借款合同》签字页。

甲方：新亚（中国）国际集团有限公司（New Asia (China) International Group Company Limited，

法定代表人或委托代理人：

签字：

2019　年2月17日

乙方：

Hongkun USA Investment LLC

CEO：Richard Fan Liu

签字：

2019年2月7日

9



**HONGKUN**
USA

丙方：北京鸿坤伟业房地产开发有限公司

法人代表：朱灿

签字：

年　月　日

丁方：

赵彬

签字：

年　月　日

戊方：

Hongkun USA Real Estate Holdings LLC

CEO: Richard Fan Liu

签字：

2004年2月7日

10

------ ENGLISH TRANSLATION ------

# Loan Contract

Party A (Lender): New Asia (China) International Group Company Limited

Address: No.9 Floor 11, 1102-3, Queens Ave, Center of Hongkong, China

Tel: 13806001722 / 010-82250338

Party B (Borrower): Hongkun USA Investment LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212)257-8885

Party C (Guarantor 1): Beijing Hongkun Weiye Real Estate Development Co., Ltd.

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010-60240288

------ ENGLISH TRANSLATION ------

Party D (Guarantor 2): Zhao, Bin

Personal ID: ████████████

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010 - 60240288

Party E (Guarantor 3): Hongkun USA Real Estate Holdings LLC

Address: 888 7ᵗʰ Avenue, Floor 28, New York, NY 10019

Tel: (212) 257 – 8885

(Party C, D and E combined is called Guarantor)

WHEREAS:

Party A is a limited company registered in Hongkong. Party B and E are companies

registered in the United States.

Party C is a limited company registered in China.

In accordance with the laws and regulations of Hong Kong, all parties to this contract, after equal and friendly negotiation, shall reach an agreement regarding the borrowing of money from Party A by Party B and the provision of guarantees by the guarantor as follows:

**Article 1 Loan amount:** 3 million US dollars. (Hereinafter referred to as "borrowed money")

**Article 2 The loan period:**

2.1 The loan period is limited to two years; Party B can choose to notify Party A 30 days before the end of the two-year loan period and obtain Party A's consent to extend the loan period for another year.

2.2 The loan period is calculated from the date of actual payment of the borrowed money. The transfer of the borrowed money from the account under the name of Party A to the receiving account of Party B shall be deemed as the actual payment of the borrowed money. The expected starting date for borrowing will be February 20th, 2019.

**Article 3 Loan Interest Rate and Interest**

3.1 The borrowing interest rate is 10% per annum, and every year (every 365 days from the date when the borrowing is transferred to Party B's account is one year, that is, the date payable), the interest is paid once at an annual interest rate of 10%; after the loan expires, Hongkun USA Investment LLC will distribute the accrued interest at an annualized rate of 8% for all borrowed money during the borrowing period. The interest will be calculated from the day when Party B receives the loan; from one year after the start date of the loan if Party B repays the loan in advance, the interest will be calculated according to the actual use period of the loan; the interest of the loan under this agreement is based on 365 days a year, and will be calculated by the number of days occupied and the remaining amount from the date of payment of the loan principal.

------ ENGLISH TRANSLATION ------

3.2 Method of Settlement: Party B shall pay the interest and principal in sum to the account of Party A agreed in Article 4 of this Agreement on the expiry date of the loan.

**Article 4 Payment and Repayment of Loan**

4.1 Party A shall pay the principal of the borrowed money in full, in sum to the following account before February 20, 2019. After Party A pays the borrowed money to the following account, the payment of the borrowed money will be completed:

a) Account Name: Hongkun USA Real Estate Holdings LLC

b) Bank Name: Citibank, N.A.

c) Bank Address: 2071 Lemoine Ave, Fort Lee, NJ, 07024

d) Business Address: 1222 Anderson Ave, Fort Lee, NJ, 07024

e) Account Number: ███████

f)  ABA Number (Routing Number):021272655

g) Swift Code: CITIUS33

4.2 If any of the following events occur to Party B or for any other reason, Party A has the right to declare all the loans to be due at any time or at any time after the occurrence of the following events, and request in writing that Party B and the guarantor immediately pay any of the loans, partial or full repayment in real-time:

(a) Party B fails to repay the loan or any part of it on time;

(b) Party B is incapable of fulfilling its responsibilities for repaying borrowed money or repaying other debts;

(c) Any statements or guarantees made by Party B in Article 7 of this contract or by Party B or other persons in the documents to be signed under this contract are untrue, false, or misleading;

(d) Party B's borrowings, guarantees, indemnities, or other debts to a third party must be paid in advance due to breach of contract or cannot be repaid as scheduled;

(e) Party B has applied for or passed a resolution or has been applied for or is ordered by a court or government agency to liquidate, go bankrupt, designate a liquidator, receiver or trustee, etc. to dispose of its partial / all property or received a restrain and regularly order by the court;

(f) Party B is sanctioned by judicial or administrative judgments, rulings, or penalties, which adversely affects its non-cloud properties, real estate properties, or assets (including receivables), or is threatened by the above-mentioned sanctions. And the threat cannot be successfully resolved within thirty (30) days after it occurs;

(g) Any of Party B's property is seized, sealed up or confiscated or threatened to be seized, sealed up or confiscated;

(h) All of Party B's property or any important part has suffered or may be subject to confiscation, expropriation, compulsory acquisition (regardless of price acquisition), or damage so that Party A believes that Party B's ability to perform its responsibilities under this contract has been affected;

(i) The responsibilities stated in this contract or the documents required to be signed under this contract become illegal or cannot continue to be performed under the applicable laws and regulations;

(j) Party B has a serious impact on its ability to perform its obligations under this contract due to unfavorable changes in its business prospects or its own property

(k) Party B violates this contract (or other documents that must be signed under this contract).

4.3 On the day when the loan period expires, Party B shall pay the principal of the loan and the interest payable in sum to the account designated by Party A. When Party A receives the full amount, it shall be deemed to have been repaid in full.

## Article 5 Party A's Obligations

5.1 All information and materials of Party B known in the process of signing and fulfilling this contract shall be kept confidential; if Party A and Party B deem it necessary, the two parties shall sign the agreement and keep the agreement confidential.

The obligations constitute part of Article 8 of the contract.

5.2 Party A shall pay the borrowed funds in full and in time to Party B's collection account as agreed in Article 4 of this agreement.

## Article 6 Party B's Obligations

6.1 Party B shall keep confidential all the information and materials of Party A known to Party B during the process of signing and fulfilling this contract;

6.2 When the loan expires, Party B shall repay the loan to Party A in accordance with the contract agreement.

## Article 7 Statement and Guarantee

7.1 Party A's Statement and Guarantee

7.1.1) Party A is an independent civil subject established and legally existing in accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal subject to sign this contract.

7.1.2) Party A has obtained the necessary internal approval or authorization for signing this contract, and it does not violate the laws, regulations, policies, and company rules applicable to Party A.

7.2 Party B's Statement and Guarantee

7.2.1) Party B is an independent civil subject established and existing legally in accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal principle to sign this agreement.

7.2.2) Party B has obtained the necessary internal authorization to sign this contract, and does not violate the laws, regulations, policies, and company rules applicable to Party B.

7.2.3) Party B guarantees that the signing and execution of this contract and the documents that must be executed in accordance with this contract will not:

(i) Conflict or violate any laws, orders, agreements, regulations, or any judgments, injunctions, orders, decisions and decisions issued by any court, administrative or government agency that bind Party B; or

(ii) Exceed the guarantee or guarantee rights of the relevant guarantor.

7.2.4) In any court, tribunal, arbitration tribunal, or government agency, no litigation, arbitration, or administrative judgment procedure involving Party B or against its assets has commenced; at the same time, there is no such litigation, arbitration, or administrative procedure that may be launched, nor other acts or threats in the same manner.

7.2.5) No court orders, applications, legal procedures, or resolutions that will cause or are intended to cause Party B to bankrupt, wind up, or dissolve have been issued, proposed, opened, or passed.

7.2.6) All the data about Party B provided by Party B to Party A are true, reliable, complete, accurate, and not misleading.

7.3 Party C's Statement and Guarantee

7.3.1) Party C is an independent civil subject established in accordance with the law and existed in accordance with the law. It has all the necessary civil rights and capabilities and civil conduct capabilities and is a qualified legal subject to sign this

contract.

7.3.2) Party C has obtained the necessary internal approval or authorization to sign this contract and does not violate the laws, regulations, policies, and company rules applicable to Party C.

7.4 Party E's Statement and Guarantee

7.4.1) Party E is an independent civil subject established and existing legally in accordance with the law. It has all necessary civil rights and capabilities and civil conduct capabilities and has the qualifications to sign this contract.

7.4.2) Party E has obtained the necessary internal approval or authorization for signing this contract, and it does not violate the laws, regulations, policies, and company rules applicable to Party E.


**Article 8 Liability for breach of contract**

8.1 If one party's breach of contract causes the other party to take the arbitration method to realize its rights, the breaching party shall bear the expenses (including but not limited to attorney's fees, travel expenses, etc.) paid by the observant party for the realization of the rights.

8.2 Once overdue, Party B shall pay the damages to Party A at an annual interest rate of 36% of the due and unpaid principal amount, until the date when all the principal and interest are repaid to Party A.


**Article 9 Dispute Resolution.**

9.1 Any dispute arising out of the outstanding issues and/or the peformance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.

9.2 This Loan Agreement shall be governed by the laws of Hong Kong.

9.3 Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the

Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.

**Article 10 Validity, Change, and Dissolution of Contract**

10.1 This contract shall take effect from the date when each party affixed the company seal and signed by the representatives or their appointed representatives;

10.2 After the contract becomes effective, no party may change or cancel this contract without authorization, except as stipulated in this contract; if it is really necessary to change or cancel this contract, all parties shall negotiate and reach a written agreement.

**Article 11 Guarantee Terms**

11.1 With regard to Party B's debts, liabilities, interest arrears, and related expenses that Party B will repay to Party A as a result of the terms of this contract, the Guarantor (that is, Party C, Party D, and Party E) shall be jointly and severally liable without limitation. Party C undertakes and agrees to pledge its assets equal to the amount of the debt to Party A when Party A makes a request as a guarantee for the repayment of the loan.

11.2 If Party B fails to repay the loan in accordance with this contract, the guarantor hereby jointly and severally promise to repay Party A at the request of Party A (the amount does not include any right of set-off, and does not bear any tax deductions of any nature) the principal and interest of the loan still owed by Party B and other debts or expenses arising from this contract.

**Article 12 Others**

12.1 Each party guarantees that the correspondence address (including the place of residence) and contact information (including contact number, fax, Email, etc.) stated in this contract are true and valid, and can be used by the other party as confirmation address for notifying the Hong Kong International Arbitration Center or serving legal documentation. If the specified address is incorrect or the changed address is not notified in time, and the relevant materials cannot be actually received, the third day

**------ ENGLISH TRANSLATION ------**

after the materials are mailed shall be deemed to be the date of delivery.

12.2 There are five copies of this contract, and each party to the contract holds one copy.

------ **ENGLISH TRANSLATION** ------

There is no official text on this page. It is the signature page of the Loan Contract.

Party A: New Asia (China) International Group Company Limited

Legal representative or entrusted agent:

Signature:

2019 Year  2  Month   17  Date

Party B:

Hongkun USA Investment LLC

CEO: Richard Fan Liu

Signature:

2019 Year  2  Month   17  Date

------ ENGLISH TRANSLATION ------

Party C: Beijing Hongkun Weiye Real Estate Development Co., Ltd

Legal representative: Zhu, Can

Signature:

Year    Month    Date

Party D:

Zhao, Bin

Signature:

Year    Month    Date

Party E:

Hongkun USA Real Estate Holdings LLC

CEO: Richard Fan Liu

Signature:

2019 Year  2  Month   17  Date

CERTIFICATION OF ACCURACY OF TRANSLATION

I, the undersigned, hereby certify Rule 1:4-4(b) that:

I am not a party to the action and am over 18 years old. I am currently working at the New York office of the Plaintiffs' law firm Reid & Wise LLC. I am fluent in both the Chinese and English languages and am competent to translate between Chinese and English. Chinese is my native language. I have studied English for more than twenty years. I have taken law school courses that were taught in English at William and Mary Law School and obtained JD and LLM degrees therefrom. I have been using both Chinese and English as working languages since September 2012.

This is to certify that, to the best of my ability, the English translation of the Chinese words in the foregoing **Exhibit A** is an accurate and complete translation and is equivalent to its original Chinese version.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Zheng Gao

Dated: December 17, 2021

# EXHIBIT B



# HONGKUN
## USA

### 借款合同



**甲方（出借人）：** 华鑫通国际投资管理有限公司

地址：P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.

联系电话：010-82250338

**乙方（借款人）：** Hongkun USA Investment LLC

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

**丙方（担保人一）：** 北京鸿坤伟业房地产开发有限公司

地址：北京大兴区欣荣北大街45号1号楼1层8室

联系电话：010-62040288

**丁方（担保人二）：** 赵彬，身份证号码：███████████

地址：北京市大兴区欣荣北大街45号1号楼1层室

联系电话：010-62040288





**HONGKUN**
USA

**戊方（担保人三）**：Hongkun USA Real Estate Holdings LLC

地址:888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

　　（丙方、丁方及戊方三方合称为"担保方"）


**鉴于：**

甲方为一家于BVI注册的有限公司。乙方及戊方为一家于美国注册的有限公司。丙方为一家于中国注册的有限公司。


本合同各方根据香港法律、法规规定，经平等、友好协商，就乙方向甲方借款、担保方提供担保事宜达成协议如下：

**第 1 条 借款金额：**500 万美金（下称"借款"）。

**第 2 条 借款期限：**

2.1借款期限为两年；乙方可选择在两年借款到期前 30 天通知甲方并取得甲方同意后将贷款期限再延期一年。

2.2借款期限自借款实际交付之日起计算。借款从甲方名下的账户划转至乙方收款账户视为借款实际交付。预期借款起始日将为 2019 年 5 月 6 日。

**第 3 条 借款利率及利息**

3.1借款利率为年利率10%，每年（借款自划转至乙方账户之日起每满365天为1



**HONGKUN**
USA

个年度，即派息日）按照年利率10%派息一次；在贷款到期(含提前到期)之日，Hongkun USA Investment LLC 将一次性再次派发借款期间全部借款每年年化率为8%的应计利息。自乙方收到借款的当日起计息； 借款满一年后如乙方提前归还借款，利息按借款实际使用期限计算；本协议项下借款利息以每年365 日为基数，从借款本金划付日起按资金余额和占用天数计收。

### 第 4 条 借款支付与偿还

4.1甲方应于  2019 年 5 月 6   日前将借款本金一次性足额支付到如下账户内。甲方将借款支付到如下帐户后即完成借款交付：

a)账户名（Account Name）：Hongkun USA Real Estate Holdings LLC

b)开户行（Bank Name）：Citibank, N.A.

c)开户行地址（Bank Address）：2071 Lemoine Ave, Fort Lee, NJ, 07024

d)开户人地址（Business Address）：1222 Anderson Ave, Fort Lee, NJ, 07024

e)账户号码（Account Number）：▇▇▇▇▇▇▇

f)ABA 号码（Routing Number）：021272655

g)Swift Code：CITIUS33

4.2若乙方发生任何下述事件或基于任何其他原因，甲方有权在发生下述事件后的任何时间或于任何时间宣告全部借款立即到期，并书面要求乙方及担保方立即将借款的任何部份或全部实时清偿：

(a)     乙方没有按时偿付借款或其任何部份；



(b)     乙方无能力履行清偿借款或偿还其他债务的责任；

(c)     乙方在本合同第七条或乙方或其他人士在根据本合同须签订的文件中所作的任何陈述或保证有任何失实、错误或误导；

(d)     乙方对第三者的借款、担保、赔偿或其他债项，因违约而须提前偿付或到期而不能如期偿付；

(e)     乙方申请或通过决议或被人申请或因法院或政府机关的命令清盘、破产、指定清盘人、接管人或信托人等人去处理其所有或大部分财产或被法院下令监管财产；

(f)     乙方受司法或行政部门的判决、裁定或处罚决定所制裁，对其不动产、物业或财产（包括应收款）等有不利的影响，或有受上述制裁的威胁，而该等威胁又不能在发生后三十（30）天内圆满解除；

(g)     乙方的任何财产被扣押、查封或没收或有被扣押、查封或没收的威胁；

(h)     乙方的全部财产或任何重要关键部份遭受或可能遭受没收、征用、强制性收购（不论是否有价收购）、或受到损毁破坏，以致甲方认为乙方履行其在本合同下的责任之能力已受到影响；

(i)     本合同或根据本合同须签订的文件所述的责任在适用法律规范下变得不合法或不可能继续履行；

(j)     乙方因其业务经营前景或其所拥有财产出现不利变化而严重影响其履行本合同所负偿还责任的能力；

(k)     乙方违反本合同（或根据本合同须签订的其他文件）的约定。

4.3借款期限届满之日，乙方应将借款本金和应付的利息一次性足额支付至甲方指定的账户内。甲方收到全额款项即视为借款还清。



**第 5 条 甲方义务**

5.1对于在签订、履行本合同的过程中所知悉的乙方的所有信息和资料均应当予以保密； 如甲方和乙方认为有必要的，双方应当签订一份保密协议，保密协议中乙方应当遵守的义务构成本合同第 8 条的组成部分。

5.2甲方应及时足额将借款资金支付至本协议第 4 条约定的乙方收款账户。

**第 6 条 乙方义务**

6.1乙方对在签订、履行本合同的过程中所知悉的甲方的所有信息和资料均应当予以保密；

6.2借款到期，乙方应按合同约定向甲方偿还借款。

**第 7 条 陈述与保证**

7.1甲方的陈述与保证

7.1.1)甲方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.1.2)甲方已获得签署本合同所必须的内部审批或授权，不违反适用于甲方的法律、法规、政策和公司章程等规定。

7.2乙方的陈述与保证

7.2.1)乙方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本协议的合法主体资格。

7.2.2)乙方已获得签署本合同所必须的内部授权，不违反适用于乙方的法律、法规、政策和公司章程等规定。

7.2.3)乙方保证本合同、根据本合同须签立的文件之签署和履行，均不会：



**HONGKUN**
USA

(i) 　抵触或违反任何对有关乙方有约束力的法律、命令、协议、章程或任何法院、行政和政府机关颁布的判决、禁令、命令、决定和裁决；及

(ii) 　超越有关担保方的保证或担保权限。

7.2.4) 在任何法院、法庭、仲裁庭或政府机关均没有任何以乙方为当事人或针对其的资产之诉讼、仲裁或行政裁判程序已展开；同时，亦不存在该等诉讼、仲裁或行政裁判程序可能展开的威胁之重要事实或情况。

7.2.5) 没有任何令或旨在令乙方破产、清盘、解散的法庭命令、申请、法律程序或决议已颁发、提出、展开或通过。

7.2.6) 乙方向甲方提供关于乙方的所有数据均真实可靠、完整、准确、没有误导成份。

7.3 丙方的陈述与保证

7.3.1) 丙方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.3.2) 丙方已获得签署本合同所必须的内部审批或授权，不违反适用于丙方的法律、法规、政策和公司章程等规定。

7.4 戊方的陈述与保证

7.4.1) 戊方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.4.2) 戊方已获得签署本合同所必须的内部审批或授权，不违反适用于戊方的法律、法规、政策和公司章程等规定。



### 第 8 条  违约责任

8.1因一方违约导致另一方采取仲裁方式实现权利的，违约方应承担守约方为此支付的实现权利的费用（包括但不限于律师费、差旅费等）。

8.2一旦逾期，乙方须按照全部应付未付金额按年利率36%的标准向甲方支付违约金，至全部归还完毕甲方本息之日为止

### 第 9 条  争议解决

9.1 本合同未尽事宜以及履行本合同所产生的争议，由甲乙双方协商解决，协商不成，通过仲裁解决及处理。

9.2 本合同适用香港法律。

9.3凡因本合同所引起的或与之相关的任何争议、纠纷、分歧或索赔，包括合同的效力、解释、履行、违反或终止，或因本合同引起的或与之相关的任何非合同性争议，均应提交由香港国际仲裁中心，并按照提交仲裁时有效的《香港国际仲裁中心机构仲裁规则》仲裁，仲裁裁决对本合同各方有约束力，并为终局决定。

### 第 10 条  合同的生效、变更与解除

10.1本合同自各方加盖公司公章且双方法定代表人或其委托代理人签字之日起生效；

10.2合同生效后，除本合同已有约定以外，任何一方均不得擅自变更或解除本



合同；如确需变更或解除本合同，应经各方协商一致，并达成书面协议。

### 第 11 条 担保条款

11.1 就乙方因本合同条款而引致乙方应偿还甲方的借款、债务、利息欠款和相关费用支出，担保方（即丙方、丁方和戊方）共同地及个别地承担无限连带担保责任。丙方承诺及同意在甲方发出要求时将其相应于该等债务金额的资产抵押给甲方作为偿还借款的担保。

11.2 如乙方未能根据本合同偿还借款，担保方兹共同地及个别地承诺会应甲方要求向甲方偿还(金额不含任何抵销权，并且不负担任何性质的税项的扣减)乙方尚欠的借款本息及其他根据本合同引起的债务或费用。

### 第 12 条 其他

12.1各方均保证本合同所载明的通讯地址（包括住所地）、联系方式（包括联系电话、传真、Email 等）真实有效，可以作为对方通知香港国际仲裁中心送达法律文书的确认地址，因载明的地址有误或未及时告知变更后的地址，导致相关材料未能实际被接收的，自材料邮寄后第三日视为送达之日。

12.2本合同一式伍份，合同各方各执壹份。

本页无正文，为《借款合同》签字页。



**HONGKUN**
U.S.A

甲方：华鑫通国际投资管理有限公司

法定代表人或委托理人：

签字

2019 年 4月30日

乙方：

Hongkun USA Investment LLC

CEO：Richard Liu

签字：

2019年4月30日

丙方：

北京鸿坤伟业房地产开发有限公司

法人代表：朱

签字：

2019年4月30日



丁方：

赵彬

签字：

2019 年 4月3日

戊方：

Hongkun USA Real Estate Holdings LLC

CEO: Richard Liu

签字：

2019年4月3日

------ ENGLISH TRANSLATION ------

# Loan Contract

Party A (Lender): Huaxintong International Investment Management Limited

Address: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin

Islands.

Tel: 010-82250338

Party B (Borrower): Hongkun USA Investment LLC

Address: 888 7ᵗʰ Avenue, Floor 28, New York, NY 10019

Tel: (212) 257-8885

Party C (Guarantor 1): Beijing Hongkun Weiye Real Estate Development Co., Ltd.

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010-60240288

Party D (Guarantor 2): Zhao, Bin

Personal ID: ███████████

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China


Tel: 010 - 60240288


Party E (Guarantor 3): Hongkun USA Real Estate Holdings LLC


Address: 888 7th Avenue, Floor 28, New York, NY 10019


Tel: (212) 257 – 8885


(Party C, D and E combined is called Guarantor)



WHEREAS:


Party A is a limited company registered in BVI. Party B and E are companies registered in

the United States.

Party C is a limited company registered in China.

In accordance with the laws and regulations of Hong Kong, all parties to this contract, after

equal and friendly negotiation, shall reach an agreement regarding the borrowing of money

from Party A by Party B and the provision of guarantees by the guarantor as follows:


**Article 1 Loan amount:** 5 million US dollars. (Hereinafter referred to as "borrowed money")
**Article 2 The loan period:**
2.1 The loan period is limited to two years; Party B can choose to notify Party A 30 days
before the end of the two-year loan period and obtain Party A's consent to extend the loan

period for another year.

2.2 The loan period is calculated from the date of payment of the borrowed money. The transfer of the borrowed money from the account under the name of Party A to the receiving account of Party B shall be regarded as the actual payment of the borrowed money. The expected starting date for borrowing will be May 6, 2019.

**Article 3 Loan Interest Rate and Interest**

3.1 The borrowing interest rate is 10% per annum, and every year (every 365 days from the date when the borrowing is transferred to Party B's account is one year, that is, the date payable), the interest is paid once at an annual interest rate of 10%; after the loan expires, Hongkun USA Investment LLC will distribute the accrued interest at an annualized rate of 8% for all borrowings during the borrowing period. The interest will be calculated from the day when Party B receives the borrowed money; if Party B repays the loan in advance, the interest will be calculated according to the actual use period of the loan; the interest of the loan under this agreement is based on 365 days a year, and will be calculated by the number of days occupied and the remaining amount from the date of payment of the loan principal.

**Article 4 Payment and Repayment of Loan**

4.1 Party A shall pay the principal of the borrowed money in full, in sum to the following account before May 6, 2019. After Party A pays the borrowed money to the following account, the payment of the borrowed money will be completed:

a) Account Name: Hongkun USA Real Estate holdings LLC

b) Bank Name: Citibank, N.A.

c) Bank Address: 2071 Lemoine Ave, Fort Lee, NJ, 07024

d) Business Address: 1222 Anderson Ave, Fort Lee, NJ, 07024

e) Account Number: ████████

f) ABA Number (Routing Number):021272655

g) Swift Code: CITIUS33

4.2 If any of the following events occur to Party B or for any other reason, Party A has the right to declare all the loans to be due at any time or at any time after the occurrence of the following events, and request in writing that Party B and the guarantor immediately pay any of the loans, partial or full repayment in real-time:

(a) Party B fails to repay the loan or any part of it on time;

(b) Party B is incapable of fulfilling its responsibilities for repaying borrowed money or repaying other debts;

(c) Any statements or guarantees made by Party B in Article 7 of this contract or by Party B or other persons in the documents to be signed under this contract are untrue, false, or misleading;

(d) Party B's borrowings, guarantees, indemnities, or other debts to a third party must be paid in advance due to breach of contract or cannot be repaid as scheduled;

(e) Party B has applied for or passed a resolution or has been applied for or is ordered by a court or government agency to liquidate, go bankrupt, designate a liquidator, receiver or trustee, etc. to dispose of its partial / all property or received a restrain and regularly order by the court;

(f) Party B is sanctioned by judicial or administrative judgments, rulings, or penalties, which adversely affects its non-cloud properties, real estate properties, or assets (including receivables), or is threatened by the above-mentioned sanctions. And the threat cannot be successfully resolved within thirty (30) days after it occurs;

(g) Any of Party B's property is seized, sealed up or confiscated or threatened to be seized, sealed up or confiscated;

(h) All of Party B's property or any important part has suffered or may be subject to confiscation, expropriation, compulsory acquisition (regardless of price acquisition), or

damage so that Party A believes that Party B's ability to perform its responsibilities under this contract has been affected;

(i) The responsibilities stated in this contract or the documents required to be signed under this contract become illegal or cannot continue to be performed under the applicable laws and regulations;

(j) Party B has a serious impact on its ability to perform its obligations under this contract due to unfavorable changes in its business prospects or its own property

(k) Party B violates this contract (or other documents that must be signed under this contract).

4.3 On the day when the loan period expires, Party B shall pay the principal of the loan and the interest payable in sum to the account designated by Party A. When Party A receives the full amount, it shall be deemed to have been repaid in full.

**Article 5 Party A's Obligations**

5.1 All information and materials of Party B known in the process of signing and fulfilling this contract shall be kept confidential; if Party A and Party B deem it necessary, the two parties shall sign the agreement and keep the agreement confidential.

The obligations constitute part of Article 8 of the contract.

5.2 Party A shall pay the borrowed money in full and in time to Party B's collection account as agreed in Article 4 of this agreement.

**Article 6 Party B's Obligations**

6.1 Party B shall keep confidential all the information and materials of Party A known to Party B during the process of signing and fulfilling this contract;

6.2 When the loan expires, Party B shall repay the loan to Party A in accordance with the contract agreement.

**Article 7 Statement and Guarantee**

7.1 Party A's Statement and Guarantee

7.1.1) Party A is an independent civil subject established and legally existing in

accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal subject to sign this contract.

7.1.2) Party A has obtained the necessary internal approval or authorization for signing this contract, and it does not violate the laws, regulations, policies, and company rules applicable to Party A.

## 7.2 Party B's Statement and Guarantee

7.2.1) Party B is an independent civil subject established and existing legally in accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal principle to sign this agreement.

7.2.2) Party B has obtained the necessary internal authorization to sign this contract, and does not violate the laws, regulations, policies, and company rules applicable to Party B.

7.2.3) Party B guarantees that the signing and execution of this contract and the documents that must be executed in accordance with this contract will not:

(i) Conflict or violate any laws, orders, agreements, regulations, or any judgments, injunctions, orders, decisions and decisions issued by any court, administrative or government agency that bind Party B; or

(ii) Exceeding the guarantee or guarantee rights of the relevant guarantor.

7.2.4) In any court, tribunal, arbitration tribunal, or government agency, no litigation, arbitration, or administrative judgment procedure involving Party B or against its assets has commenced; at the same time, there is no such litigation, arbitration, or administrative procedure that may be launched, nor other acts or threats in the same manner.

7.2.5) No court orders, applications, legal procedures, or resolutions that will cause or are intended to cause Party B to bankrupt, wind up, or dissolve have been issued, proposed, opened, or passed.

7.2.6) All the data about Party B provided by Party B to Party A are true, reliable, complete, accurate, and not misleading.

## 7.3 Party C's Statement and Guarantee

7.3.1) Party C is an independent civil subject established in accordance with the law

and existed in accordance with the law. It has all the necessary civil rights and capabilities and civil conduct capabilities and is a qualified legal subject to sign this contract.

7.3.2) Party C has obtained the necessary internal approval or authorization to sign this contract and does not violate the laws, regulations, policies, and company rules applicable to Party C.

7.4 Party E's Statement and Guarantee

7.4.1) Party E is an independent civil subject established and existing legally in accordance with the law. It has all necessary civil rights and capabilities and civil conduct capabilities and has the qualifications to sign this contract.

7.4.2) Party E has obtained the necessary internal approval or authorization for signing this contract, and it does not violate the laws, regulations, policies, and company rules applicable to Party E.

## Article 8 Liability for breach of contract

8.1 If one party's breach of contract causes the other party to take the arbitration method to realize its rights, the breaching party shall bear the expenses (including but not limited to attorney's fees, travel expenses, etc.) paid by the observant party for the realization of the rights.

8.2 Once overdue, Party B shall pay the damages to Party A at an annual interest rate of 36% of the due and unpaid principal amount, until the date when all the principal and interest are repaid to Party A.

## Article 9 Dispute Resolution.

9.1 Any dispute arising out of the outstanding issues and/or the peformance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.

9.2 This Loan Agreement shall be governed by the laws of Hong Kong.

9.3 Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination

thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.

### Article 10 Validity, Change, and Dissolution of Contract

10.1 This contract shall take effect from the date when each party affixed the company seal and signed by the representatives or their appointed representatives;

10.2 After the contract becomes effective, no party may change or cancel this contract without authorization, except as stipulated in this contract; if it is really necessary to change or cancel this contract, all parties shall negotiate and reach a written agreement.

### Article 11 Guarantee Terms

11.1 With regard to Party B's debts, liabilities, interest arrears, and related expenses that Party B will repay to Party A as a result of the terms of this contract, the Guarantor (that is, Party C, Party D, and Party E) shall be jointly and severally liable without limitation. Party C undertakes and agrees to pledge its assets equal to the amount of the debt to Party A when Party A makes a request as a guarantee for the repayment of the loan.

11.2 If Party B fails to repay the loan in accordance with this contract, the guarantor hereby jointly and severally promise to repay Party A at the request of Party A (the amount does not include any right of set-off, and does not bear any tax deductions of any nature) the principal and interest of the loan still owed by Party B and other debts or expenses arising from this contract.

### Article 12 Others

12.1 Each party guarantees that the correspondence address (including the place of residence) and contact information (including contact number, fax, Email, etc.) stated in this contract are true and valid, and can be used by the other party as confirmation address for notifying the Hong Kong International Arbitration Center or sereving legal documentation. If the specified address is incorrect or the

------ ENGLISH TRANSLATION ------

changed address is not notified in time, and the relevant materials cannot be actually received, the third day after the materials are mailed shall be deemed to be the date of delivery.

12.2 There are five copies of this contract, and each party to the contract holds one copy.

------ ENGLISH TRANSLATION ------

There is no official text on this page. It is the signature page of the Loan Contract.

Party A: Huaxintong International Investment Management Limited

Legal representative or entrusted agent:

Signature:

        2019  Year  4   Month    30   Date

Party B:

Hongkun USA Investment LLC

CEO: Richard Liu

Signature:

        2019  Year  4   Month    30   Date

------ ENGLISH TRANSLATION ------

Party C: Beijing Hongkun Weiye Real Estate Development Co., Ltd

Legal representative: Zhu, Can

Signature:

2019  Year  4   Month   30  Date

Party D:

Zhao, Bin

Signature:

2019  Year  4   Month   30  Date

Party E:

Hongkun USA Real Estate Holdings LLC

CEO: Richard Liu

Signature:

2019  Year  4   Month   30  Date

## CERTIFICATION OF ACCURACY OF TRANSLATION

I, the undersigned, hereby certify Rule 1:4-4(b) that:

I am not a party to the action and am over 18 years old. I am currently working at the New York office of the Plaintiffs' law firm Reid & Wise LLC. I am fluent in both the Chinese and English languages and am competent to translate between Chinese and English. Chinese is my native language. I have studied English for more than twenty years. I have taken law school courses that were taught in English at William and Mary Law School and obtained JD and LLM degrees therefrom. I have been using both Chinese and English as working languages since September 2012.

This is to certify that, to the best of my ability, the English translation of the Chinese words in the foregoing **Exhibit B** is an accurate and complete translation and is equivalent to its original Chinese version.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Zheng Gao

Dated: December 17, 2021

# EXHIBIT C



# HONGKUN
USA

For and on behalf
Huaxintong Internation
华鑫通国际

## 借款合同

甲方（出借人）：华鑫通国际投资管理有限公司

地址：P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.

联系电话：010-82250338

乙方（借款人）： Hongkun USA Investment LLC

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

丙方（担保人一）：北京鸿坤伟业房地产开发有限公司

地址：北京大兴区欣荣北大街45号1号楼1层8室

联系电话：010-62040288

丁方（担保人二）：赵彬, 身份证号码：█████████ 地

址：北京市大兴区欣荣北大街45号1号楼1层8室

联系电话：010-62040288



**HONGKUN**
USA

戊方（担保人三）：Hongkun USA Real Estate Holdings LLC

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

（丙方、丁方及戊方三方合称为"担保方"）

鉴于：

甲方为一家于BVI注册的有限公司。乙方及戊方为一家于美国注册的有限公司。丙方为一家于中国注册的有限公司。

本合同各方根据香港法律、法规规定，经平等、友好协商，就乙方向甲方借款、担保方提供担保事宜达成协议如下：

第 1 条 借款金额：500 万美金（下称"借款"）。

第 2 条 借款期限：

2.1借款期限为30天，乙方不得提前还款或逾期。

2.2借款期限自借款实际交付之日起计算。借款从甲方名下的账户划转至乙方收款账户视为借款实际交付。预期借款起始日将为 2019 年 5 月 28日。

第 3 条 借款利率及利息

3.1借款利率为年利率20%。



**HONGKUN**
USA

**第 4 条 借款支付与偿还**

4.1 甲方应于 2019 年 5 月<u>28</u>日前将借款本金一次性足额支付到如下账户内。甲方将借款支付到如下帐户后即完成借款交付：

a)账户名（Account Name）：Hongkun USA Real Estate Holdings LLC

b)开户行（Bank Name）：Citibank, N.A.

c)开户行地址（Bank Address）：2071 Lemoine Ave, Fort Lee, NJ, 07024

d)开户人地址（Business Address）：1222 Anderson Ave, Fort Lee, NJ, 07024

e)账户号码（Account Number）：███████

f)ABA 号码（Routing Number）：021272655

g)Swift Code：CITIUS33

4.2 若乙方发生任何下述事件或基于任何其他原因，甲方有权在发生下述事件后的任何时间或于任何时间宣告全部借款立即到期，并书面要求乙方及担保方立即将借款的任何部份或全部实时清偿：

(a)    乙方没有按时偿付借款或其任何部份；



**HONGKUN**
USA

(b)　　乙方无能力履行清偿借款或偿还其他债务的责任；

(c)　　乙方在本合同第七条或乙方或其他人士在根据本合同须签订的文件中所作的任何陈述或保证有任何失实、错误或误导；

(d)　　乙方对第三者的借款、担保、赔偿或其他债项，因违约而须提前偿付或到期而不能如期偿付；

(e)　　乙方申请或通过决议或被人申请或因法院或政府机关的命令清盘、破产、指定清盘人、接管人或信托人等人去处理其所有或大部分财产或被法院下令监管财产；

(f)　　乙方受司法或行政部门的判决、裁定或处罚决定所制裁，对其不动产、物业或财产（包括应收款）等有不利的影响，或有受上述制裁的威胁，而该等威胁又不能在发生后三十（30）天内圆满解除；

(g)　　乙方的任何财产被扣押、查封或没收或有被扣押、查封或没收的威胁；

(h)　　乙方的全部财产或任何重要关键部份遭受或可能遭受没收、征用、强制性收购（不论是否有价收购）、或受到损毁破坏，以致甲方认为乙方履行其在本合同下的责任之能力已受到影响；

(i)　　本合同或根据本合同须签订的文件所述的责任在适用法律规范下变得不合法或不可能继续履行；

(j)　　乙方因其业务经营前景或其所拥有财产出现不利变化而严重影响其履行本合同所负偿还责任的能力；

(k)　　乙方违反本合同(或根据本合同须签订的其他文件)的约定。

4.3 借款期限届满之日，乙方应将借款本金和应付的利息一次性足额支付至甲方指定的账户内。甲方收到全额款项即视为借款还清。



**第 5 条  甲方义务**

5.1 对于在签订、履行本合同的过程中所知悉的乙方的所有信息和资料均应当予以保密；  如甲方和乙方认为有必要的，双方应当签订一份保密协议，保密协议中乙方应当遵守的义务构成本合同第 8 条的组成部分。

5.2 甲方应及时足额将借款资金支付至本协议第 4 条约定的乙方收款账户。

**第 6 条  乙方义务**

6.1 乙方对在签订、履行本合同的过程中所知悉的甲方的所有信息和资料均应当予以保密；

6.2 借款到期，乙方应按合同约定向甲方偿还借款。

**第 7 条  陈述与保证**

7.1 甲方的陈述与保证

7.1.1)  甲方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.1.2)  甲方已获得签署本合同所必须的内部审批或授权，不违反适用于甲方的法律、法规、政策和公司章程等规定。

7.2 乙方的陈述与保证

7.2.1)  乙方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本协议的合法主体资格。

7.2.2)  乙方已获得签署本合同所必须的内部授权，不违反适用于乙方的法律、法规、政策和公司章程等规定。

7.2.3)  乙方保证本合同、根据本合同须签立的文件之签署和履行，均不会：



**HONGKUN**
USA

(i)　　　抵触或违反任何对有关乙方有约束力的法律、命令、协议、章程或任何法院、行政和政府机关颁布的判决、禁令、命令、决定和裁决；及

(ii)　　　超越有关担保方的保证或担保权限。

7.2.4)　在任何法院、法庭、仲裁庭或政府机关均没有任何以乙方为当事人或针对其的资产之诉讼、仲裁或行政裁判程序已展开；同时，亦不存在该等诉讼、仲裁或行政裁判程序可能展开的威胁之重要事实或情况。

7.2.5)　没有任何令或旨在令乙方破产、清盘、解散的法庭命令、申请、法律程序或决议已颁发、提出、展开或通过。

7.2.6)　乙方向甲方提供关于乙方的所有数据均真实可靠、完全、准确、没有误导成份。

7.3 丙方的陈述与保证

7.3.1)　丙方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.3.2)　丙方已获得签署本合同所必须的内部审批或授权，不违反适用于丙方的法律、法规、政策和公司章程等规定。


7.4 戊方的陈述与保证

7.4.1)　戊方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.4.2)　戊方已获得签署本合同所必须的内部审批或授权，不违反适用于戊方的法律、法规、政策和公司章程等规定。



### 第 8 条 违约责任

8.1 因一方违约导致另一方采取仲裁方式实现权利的，违约方应承担守约方为此支付的实现权利的费用（包括但不限于律师费、差旅费等）。

8.2 一旦违约（包括不限于提前还款或逾期还款等），乙方须按照全部应付未付金额按年利率36%的标准向甲方支付违约金，至全部归还完毕甲方本息之日为止

### 第 9 条 争议解决

9.1 本合同未尽事宜以及履行本合同所产生的争议，由甲乙双方协商解决，协商不成，通过仲裁解决及处理。

9.2 本合同适用香港法律。

9.3 凡因本合同所引起的或与之相关的任何争议、纠纷、分歧或索赔，包括合同的效力、解释、履行、违反或终止，或因本合同引起的或与之相关的任何非合同性争议，均应提交由香港国际仲裁中心，并按照提交仲裁时有效的《香港国际仲裁中心机构仲裁规则》仲裁，仲裁裁决对本合同各方有约束力，并为终局决定。

### 第 10 条 合同的生效、变更与解除

10.1 本合同自各方加盖公司公章且双方法定代表人或其委托代理人签字之日起生效；

10.2 合同生效后，除本合同已有约定以外，任何一方均不得擅自变更或解除本



合同；如确需变更或解除本合同，应经各方协商一致，并达成书面协议。

第 11 条 担保条款

11.1 就乙方因本合同条款而引致乙方应偿还甲方的借款、债务、利息欠款和相关费用支出，担保方（即丙方、丁方和戊方）共同地及个别地承担无限连带担保责任。丙方承诺及同意在甲方发出要求时将其相应于该等债务金额的资产抵押给甲方作为偿还借款的担保。

11.2 如乙方未能根据本合同偿还借款，担保方兹共同地及个别地承诺会应甲方要求向甲方偿还（金额不含任何抵销权，并且不负担任何性质的税项的扣减）乙方尚欠的借款本息及其他根据本合同引起的债务或费用。

第 12 条 其他

12.1 各方均保证本合同所载明的通讯地址（包括住所地）、联系方式（包括联系电话、传真、Email 等）真实有效，可以作为对方通知香港国际仲裁中心送达法律文书的确认地址，因载明的地址有误或未及时告知变更后的地址，导致相关材料未能实际被接收的，自材料邮寄后第三日视为送达之日。

12.2 本合同一式伍份，合同各方各执壹份。

本页无正文，为《借款合同》签字页。

# HONGKUN
### USA

甲方：华鑫通国际投资管理有限公司

For and on behalf of
Huaxintong International Investment Management Limited
华鑫通国际投资管理有限公司

法定代表人或委托代理人：*Gao Yangyu*

*Authorized Signature(s)*

签字

2019 年5 月旧

乙方：

Hongkun USA Investment LLC CEO

: Richard Liu

签字：

2019年6月24日

丙方：

北京鸿坤伟业房地产开发有限公司

法人代表：朱灿

签字：

2019年 5 月 日



**HONGKUN**
USA



# 补充协议

甲方（出借人）：华鑫通国际投资管理有限公司

地址：P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.

联系电话：010-82250338

乙方（借款人）： Hongkun USA Investment LLC

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

丙方（担保人一）：北京鸿坤伟业房地产开发有限公司

地址：北京大兴区欣荣北大街45号1号楼1层8室

联系电话：010-62040288



丁方（担保人二）：赵彬

身份证号码：████████████

地址：北京市大兴区欣荣北大街45号1号楼1层8室

联系电话：010-62040288



戊方（担保人三）：Hongkun USA Real Estate Holdings LLC

地址:888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

（丙方、丁方及戊方三方合称为"担保方"）

鉴于：

1. 甲方为一家于BVI注册的有限公司。乙方及戊方为一家于美国注册的有限公司。丙方为一家于中国注册的有限公司。

2. 各方于2019年5月24日签订了借款金额为500万美金的《借款合同》（以下简称"原合同"），原合同约定借款期限为30天，现各方同意延长借款期限至40天，协商达成如下补充协议：

一、 根据原合同约定，借款期限为30天，即乙方应于2019年6月26日向甲方偿还500万美金借款，现各方一致同意将借款期限延长至40天，即乙方应于2019年7月6日向甲方偿还500万美金借款，不得提前还款或逾期还款。

二、 延期期间的借款利率、利息及其他事项约定等均按照原合同约定执行。

三、 鉴于除了原合同及本补充协议所述的500万美金借款的债权债务关系，甲方、乙方及担保方尚存在其他债权债务及担保关系，并签署了对应的有效成立的借款合同和担保协议。为避免歧义，各方同意，各项债权债务及担保



关系独立存在，互不影响，某一项债权债务或担保关系的变更、解除、届满清偿或违约等，并不影响其他债权债务和担保关系，不会构成其他已存债权债务和担保的变更、解除、提前届满或违约等。具体而言，以原合同4.2条为例，若乙方发生该条所列各项违约事件，甲方有权宣告原合同对应的500万元借款立即到期，但是各方在原合同之前所订立的其他借款合同和担保协议并不因之而提前到期，各方仍应按照对应的各项合同约定履行。

四、 本合同一式伍份，合同各方各执壹份。


本页无正文，为《补充协议》签字页。



**HONGKUN**
USA

甲方：华鑫通国际投资管理有限公司

法定代表人或委托代理人：

签字

2019 年 5 月 9 日

乙方：

Hongkun USA Investment LLC

CEO：Richard Liu

签字：

2019 年 5 月 29 日

丙方：

北京鸿坤伟业房地产开发有限公司

法人代表：朱灿

签字：

2019 年 5 月 29 日



Management Limited
聖有限公司

Sed Signature(s)

丁方：

赵 彬

签字：

2019年 5 月29日

戊方：

Hongkun USA Real Estate Holdings LLC

CEO: Richard Liu

签字：

2019 年 5 月 29 日





# 补充协议 （二）

甲方（出借人）：华鑫通国际投资管理有限公司

地址：P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.

联系电话：010-82250338

乙方（借款人）： Hongkun USA Investment LLC

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

丙方（担保人一）：北京鸿坤伟业房地产开发有限公司

地址：北京大兴区欣荣北大街45号1号楼1层8室

联系电话：010-62040288



丁方（担保人二）：赵彬

身份证号码：█████████

地址：北京市大兴区欣荣北大街45号1号楼1层8室

联系电话：010-62040288

# HONGKUN
## USA

戊方（担保人三）：Hongkun USA Real Estate Holdings LLC

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

　　　（丙方、丁方及戊方三方合称为"担保方"）


鉴于：

1. 甲方为一家于BVI注册的有限公司。乙方及戊方为一家于美国注册的有限公司。丙方为一家于中国注册的有限公司。

2. 各方于2019年5月24日签订了借款金额为500万美金的《借款合同》（以下简称"原合同"），原合同约定借款期限为30天；后各方另于2019年5月29日签署了《补充协议》，约定借款期限延长至2019年7月6日，现各方同意自2019年7月6日起再将借款期限延长90天，协商达成如下补充协议：


　　一、 根据原合同及《补充协议》约定，乙方应于2019年7月6日向甲方偿还500万美金借款，现各方一致同意将借款期限再延长90天，即乙方应于2019年10月4日向甲方偿还500万美金借款，不得提前还款或逾期还款。

　　二、 延期期间的借款利率、利息及其他事项约定等均按照原合同及《补充协议》的约定执行。

　　三、 本合同一式伍份，合同各方各执壹份。



## HONGKUN
#### USA

本页无正文，为《补充协议（二）》签字页。

甲方：华鑫通国际投资管理有限公司

法定代表人或授权代表    For and on behalf of
Huaxintong International Investment Management Limited
华鑫通国际投资管理有限公司

签字 *[signature]*

Authorised Signature(s)

2019 年 7 月 6 日

乙方：

Hongkun USA Investment LLC

CEO：Richard Liu

签字： *[signature]*

2019年7月6日

丙方：

北京鸿坤伟业房地产开发有限公司

法人代表：朱灿

签字： *[signature]*    *[seal: 北京鸿坤伟业房地产开发有限公司]*

2019 年 7 月 6 日



**HONGKUN**
USA

丁方：

赵 彬

签字：

2019年 7 月 6日

戊方：

Hongkun USA Real Estate Holdings LLC

CEO: Richard Liu

签字：

2019年7月6日

------ ENGLISH TRANSLATION ------

# Loan Contract

Party A (Lender): Huaxintong International Investment Management Limited

Address: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin

Islands.

Tel: 010-82250338

Party B (Borrower): Hongkun USA Investment LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212)257-8885

Party C (Guarantor 1): Beijing Hongkun Weiye Real Estate Development Co., Ltd.

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010-60240288

------ ENGLISH TRANSLATION ------

Party D (Guarantor 2): Zhao, Bin

Personal ID: ███████████

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010 - 60240288

Party E (Guarantor 3): Hongkun USA Real Estate Holdings LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212) 257 – 8885

(Party C, D and E combined is called Guarantor)

WHEREAS:

Party A is a limited company registered in BVI. Party B and E are companies registered in

the United States.

Party C is a limited company registered in China.

In accordance with the laws and regulations of Hong Kong, all parties to this contract, after equal and friendly negotiation, shall reach an agreement regarding the borrowing of money from Party A by Party B and the provision of guarantees by the guarantor as follows:

**Article 1 Loan amount:** 5 million US dollars. (Hereinafter referred to as "borrowed money")

**Article 2 The loan period:**

2.1 The loan period is limited to 30 days; Party B shall not prepay the loan amount prior to the end of the loan period and shall pay the borrowed money at the end of the loan period.

2.2 The loan period is calculated from the date of payment of the loan. The transfer of the borrowed money from the account under the name of Party A to the receiving account of Party B shall be regarded as the actual payment of the borrowed money. The expected starting date for borrowing will be May 28, 2019.

**Article 3 Loan Interest Rate and Interest**

3.1 The borrowing interest rate is 20% per annum.

**Article 4 Payment and Repayment of Loan**

4.1 Party A shall pay the principal of the borrowed money in full, in sum to the following account before May 28, 2019. After Party A pays the borrowed money to the following account, the payment of the borrowed money will be completed:

a) Account Name: Hongkun USA Real Estate Holdings LLC

b) Bank Name: Citibank, N.A.

c) Bank Address: 2071 Lemoine Ave, Fort Lee, NJ, 07024

d) Business Address: 1222 Anderson Ave, Fort Lee, NJ, 07024

e) Account Number: ████████

f) ABA Number (Routing Number):021272655

g) Swift Code: CITIUS33

4.2 If any of the following events occur to Party B or for any other reason, Party A has the right to declare all the loans to be due at any time or at any time after the occurrence of the following events, and request in writing that Party B and the guarantor immediately pay any of the loans, partial or full repayment in real-time:

(a) Party B fails to repay the loan or any part of it on time;

(b) Party B is incapable of fulfilling its responsibilities for repaying borrowed money or repaying other debts;

(c) Any statements or guarantees made by Party B in Article 7 of this contract or by Party B or other persons in the documents to be signed under this contract are untrue, false, or misleading;

(d) Party B's borrowings, guarantees, indemnities, or other debts to a third party must be paid in advance due to breach of contract or cannot be repaid as scheduled;

(e) Party B has applied for or passed a resolution or has been applied for or is ordered by a court or government agency to liquidate, go bankrupt, designate a liquidator, receiver or trustee, etc. to dispose of its partial / all property or received a restrain and regularly order by the court;

(f) Party B is sanctioned by judicial or administrative judgments, rulings, or penalties, which adversely affects its non-cloud properties, real estate properties, or assets (including receivables), or is threatened by the above-mentioned sanctions. And the threat cannot be successfully resolved within thirty (30) days after it occurs;

(g) Any of Party B's property is seized, sealed up or confiscated or threatened to be seized, sealed up or confiscated;

(h) All of Party B's property or any important part has suffered or may be subject to

confiscation, expropriation, compulsory acquisition (regardless of price acquisition), or damage so that Party A believes that Party B's ability to perform its responsibilities under this contract has been affected;

(i) The responsibilities stated in this contract or the documents required to be signed under this contract become illegal or cannot continue to be performed under the applicable laws and regulations;

(j) Party B has a serious impact on its ability to perform its obligations under this contract due to unfavorable changes in its business prospects or its own property

(k) Party B violates this contract (or other documents that must be signed under this contract).

4.3 On the day when the loan period expires, Party B shall pay the principal of the loan and the interest payable in sum to the account designated by Party A. When Party A receives the full amount, it shall be deemed to have been repaid in full.

## Article 5 Party A's Obligations

5.1 All information and materials of Party B known in the process of signing and fulfilling this contract shall be kept confidential; if Party A and Party B deem it necessary, the two parties shall sign the agreement and keep the agreement confidential.

The obligations constitute part of Article 8 of the contract.

5.2 Party A shall pay the borrowed funds in full and in time to Party B's collection account as agreed in Article 4 of this agreement.

## Article 6 Party B's Obligations

6.1 Party B shall keep confidential all the information and materials of Party A known to Party B during the process of signing and fulfilling this contract;

6.2 When the loan expires, Party B shall repay the loan to Party A in accordance with the contract agreement.

## Article 7 Statement and Guarantee

7.1 Party A's Statement and Guarantee

7.1.1) Party A is an independent civil subject established and legally existing in accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal subject to sign this contract.

7.1.2) Party A has obtained the necessary internal approval or authorization for signing this contract, and it does not violate the laws, regulations, policies, and company rules applicable to Party A.

7.2 Party B's Statement and Guarantee

7.2.1) Party B is an independent civil subject established and existing legally in accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal principle to sign this agreement.

7.2.2) Party B has obtained the necessary internal authorization to sign this contract, and does not violate the laws, regulations, policies, and company rules applicable to Party B.

7.2.3) Party B guarantees that the signing and execution of this contract and the documents that must be executed in accordance with this contract will not:

(i) Conflict or violate any laws, orders, agreements, regulations, or any judgments, injunctions, orders, decisions and decisions issued by any court, administrative or government agency that bind Party B; or

(ii) Exceeding the guarantee or guarantee rights of the relevant guarantor.

7.2.4) In any court, tribunal, arbitration tribunal, or government agency, no litigation, arbitration, or administrative judgment procedure involving Party B or against its assets has commenced; at the same time, there is no such litigation, arbitration, or administrative procedure that may be launched, nor other acts or threats in the same manner.

7.2.5) No court orders, applications, legal procedures, or resolutions that will cause or are intended to cause Party B to bankrupt, wind up, or dissolve have been issued, proposed, opened, or passed.

7.2.6) All the data about Party B provided by Party B to Party A are true, reliable, complete, accurate, and not misleading.

7.3 Party C's Statement and Guarantee

7.3.1) Party C is an independent civil subject established in accordance with the law and existed in accordance with the law. It has all the necessary civil rights and capabilities and civil conduct capabilities and is a qualified legal subject to sign this contract.

7.3.2) Party C has obtained the necessary internal approval or authorization to sign this contract and does not violate the laws, regulations, policies, and company rules applicable to Party C.

7.4 Party E's Statement and Guarantee

7.4.1) Party E is an independent civil subject established and existing legally in accordance with the law. It has all necessary civil rights and capabilities and civil conduct capabilities and has the qualifications to sign this contract.

7.4.2) Party E has obtained the necessary internal approval or authorization for signing this contract, and it does not violate the laws, regulations, policies, and company rules applicable to Party E.


**Article 8 Liability for breach of contract**

8.1 If one party's breach of contract causes the other party to take the arbitration method to realize its rights, the breaching party shall bear the expenses (including but not limited to attorney's fees, travel expenses, etc.) paid by the observant party for the realization of the rights.

8.2 Once the contract is breached (including but not limited to repay earlier or later than due date, etc.), Party B shall pay the damages to Party A at an annual interest rate of 36% of the due and unpaid principal amount, until the date when all the principal and interest are repaid to Party A.


**Article 9 Dispute Resolution.**

9.1 Any dispute arising out of the outstanding issues and/or the peformance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.

9.2 This Loan Agreement shall be governed by the laws of Hong Kong.

9.3 Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.

### Article 10 Validity, Change, and Dissolution of Contract

10.1 This contract shall take effect from the date when each party affixed the company seal and signed by the representatives or their appointed representatives;

10.2 After the contract becomes effective, no party may change or cancel this contract without authorization, except as stipulated in this contract; if it is really necessary to change or cancel this contract, all parties shall negotiate and reach a written agreement.

### Article 11 Guarantee Terms

11.1 With regard to Party B's debts, liabilities, interest arrears, and related expenses that Party B will repay to Party A as a result of the terms of this contract, the Guarantor (that is, Party C, Party D, and Party E) shall be jointly and severally liable without limitation. Party C undertakes and agrees to pledge its assets equal to the amount of the debt to Party A when Party A makes a request as a guarantee for the repayment of the loan.

11.2 If Party B fails to repay the loan in accordance with this contract, the guarantor hereby jointly and severally promise to repay Party A at the request of Party A (the amount does not include any right of set-off, and does not bear any tax deductions of any nature) the principal and interest of the loan still owed by Party B and other debts or expenses arising

from this contract.

**Article 12 Others**

12.1 Each party guarantees that the correspondence address (including the place of residence) and contact information (including contact number, fax, Email, etc.) stated in this contract are true and valid, and can be used by the other party as confirmation address for notifying the Hong Kong International Arbitration Center or serving legal documentation. If the specified address is incorrect or the changed address is not notified in time, and the relevant materials cannot be actually received, the third day after the materials are mailed shall be deemed to be the date of delivery.

12.2 There are five copies of this contract, and each party to the contract holds one copy.

------ ENGLISH TRANSLATION ------

There is no official text on this page. It is the signature page of the Loan Contract.


Party A: Huaxintong International Investment Management Limited


Legal representative or entrusted agent:


Signature:


2019  Year  5    Month    24  Date


Party B:


Hongkun USA Investment LLC


CEO: Richard Liu


Signature:


2019  Year  5    Month    24  Date


Party C: Beijing Hongkun Weiye Real Estate Development Co., Ltd


Legal representative: Zhu, Can


Signature:


2019  Year  5    Month    24  Date

# Supplemental
# Contract

Party A (Lender): Huaxintong International Investment Management Limited

Address: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin

Islands

Tel: 010 - 82250338

Party B (Borrower): Hongkun USA Investment LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212) 257 - 8885

Party C (Guarantor 1): Beijing Hongkun Weiye Real Estate Development Co., Ltd.

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010 - 60240288

Party D (Guarantor 2): Zhao, Bin

Personal ID: ███████████

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010 - 60240288

Party E (Guarantor 3): Hongkun USA Real Estate Holdings LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212) 257 – 8885

(Party C, D and E combined is called Guarantor)

WHEREAS:

1. Party A is a limited company registered in BVI. Party B and E are companies registered in the United States. Party C is a limited company registered in China.

2. All parties signed the "Loan Contract" (hereinafter referred to as the "original contract") with a loan amount of 5 million US dollars on May 24, 2019. The original contract agreed on the loan period of 30 days, and now the parties agree to extend the loan period to 40 days. Upon negotiation, all parties reached the following supplementary agreement:

I. According to the original contract, the loan period is 30 days, that is, Party B should repay the USD 5 million loan to Party A on June 26, 2019. Now all parties have agreed to extend the loan period to 40 days, that is, Party B should repay the USD 5 million loan to Party A on July 6, 2019. Party B shall not repay in advance or overdue.

II. The loan interest rate, interest, and other matters during the extension period shall be the same as those in the original contract.

III. In view of the fact that besides the creditor's rights and debts of the 5 million US dollar loan described in the original contract and this supplementary agreement, Party A, Party B, and the guarantor also have other creditor's rights, debts and guarantee relationships, and have signed corresponding effective loan contracts and guarantees contracts. In order to avoid ambiguity, all parties agree that the various claims, debts, and guarantee relationships exist independently and do not affect each other. The alteration, cancellation, expiration or default of one debt or guarantee relationship will not affect other debts and guarantee relationships, and will not constitute the

------ ENGLISH TRANSLATION ------

alteration, cancellation, expiration, or default of other existing creditor's rights, debts, and guarantee relationships. Specifically, taking Article 4.2 of the original contract as an example, if Party B has any breach of contract listed in this Article, Party A has the right to declare that the USD 5 million loan under the original contract matures immediately, but other loan contracts and guarantee agreements signed and agreed before the original contract do not mature in advance, and all parties should still perform those other loan contracts and guarantee agreements in accordance with the corresponding contracts.

IV. There are five copies of this contract, and each party to the contract holds one copy.

**------ ENGLISH TRANSLATION ------**

There is no official text on this page. It is the signature page of the Supplemental Contract.

Party A: Huaxintong International Investment & Management Co., LTD.

Legal representative or entrusted agent:

Signature:

2019  Year  5  Month  29  Date

Party B:

Hongkun USA Investment LLC

CEO: Richard Liu

Signature:

2019  Year  5  Month  29  Date

Party C:

Beijing Hongkun Weiye Real Estate Development Co., Ltd

Legal representative: Zhu, Can

Signature:

2019  Year  5  Month  29  Date

------ ENGLISH TRANSLATION ------

Party D:

Zhao, Bin

Signature:

                      2019  Year  5  Month  29  Date

Party E:

Hongkun USA Real Estate Holdings LLC

CEO: Richard Liu

Signature:

                      2019  Year  5  Month  29  Date

------ ENGLISH TRANSLATION ------

# Supplemental
# Contract II

Party A (Lender): Huaxintong International Investment Management Limited

Address: P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin

Islands

Tel: 010 - 82250338


Party B (Borrower): Hongkun USA Investment LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212) 257 - 8885


Party C (Guarantor 1): Beijing Hongkun Weiye Real Estate Development Co., Ltd.

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010 - 60240288


Party D (Guarantor 2): Zhao, Bin

Personal ID: ███████████

Address: No.45 Building 1 Room 1, Xinrong North Ave, Daxing District, Beijing, China

Tel: 010 - 60240288

------ ENGLISH TRANSLATION ------

Party E (Guarantor 3): Hongkun USA Real Estate Holdings LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212) 257 – 8885

(Party C, D and E combined is called Guarantor)

WHEREAS:

1. Party A is a limited company registered in BVI. Party B and E are companies registered in the United States. Party C is a limited company registered in China.

2. All parties signed the "Loan Contract" (hereinafter referred to as the "original contract") with a loan amount of 5 million US dollars on May 24, 2019. The original contract agreed on the loan period of 30 days, and the parties executed a supplemental contract on May 29, 2019 to extend the loan period to July 6, 2019. Now the parties agree to further extend the loan period of 90 days from the July 6, 2019. Upon negotiation, all parties reached the following supplementary agreement:

I. According to the original contract and the supplemental contract, Party B should repay the USD 5 million loan to Party A on July 6, 2019. Now all parties have agreed to further extend the loan period of 90 days, that is, Party B should repay the USD 5 million loan to Party A on October 4, 2019. Party B shall not repay in advance or overdue.

II. The loan interest rate, interest, and other matters during the extension period shall be the same as those in the original contract and the supplemental contract.

III. There are five copies of this contract, and each party to the contract holds one copy.

------ ENGLISH TRANSLATION ------

There is no official text on this page. It is the signature page of the Supplemental Contract II.

Party A: Huaxintong International Investment & Management Co., LTD.

Legal representative or entrusted agent:

Signature:

2019  Year  7  Month  6  Date

Party B:

Hongkun USA Investment LLC

CEO: Richard Liu

Signature:

2019  Year  7  Month  6  Date

Party C:

Beijing Hongkun Weiye Real Estate Development Co., Ltd

Legal representative: Zhu, Can

Signature:

2019  Year  7  Month  6  Date

------ ENGLISH TRANSLATION ------

Party D:

Zhao, Bin

Signature:

2019  Year  7  Month  6  Date

Party E:

Hongkun USA Real Estate Holdings LLC

CEO: Richard Liu

Signature:

2019  Year  7  Month  6  Date

## CERTIFICATION OF ACCURACY OF TRANSLATION

I, the undersigned, hereby certify Rule 1:4-4(b) that:

I am not a party to the action and am over 18 years old. I am currently working at the New York office of the Plaintiffs' law firm Reid & Wise LLC. I am fluent in both the Chinese and English languages and am competent to translate between Chinese and English. Chinese is my native language. I have studied English for more than twenty years. I have taken law school courses that were taught in English at William and Mary Law School and obtained JD and LLM degrees therefrom. I have been using both Chinese and English as working languages since September 2012.

This is to certify that, to the best of my ability, the English translation of the Chinese words in the foregoing **Exhibit C** is an accurate and complete translation and is equivalent to its original Chinese version.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Zheng Gao

Dated: December 17, 2021

# EXHIBIT D



# HONGKUN
### USA

## 借款合同

甲方（出借人）：华鑫通国际投资管理有限公司（Huaxintong International Investment Management Limited）

地址：P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands.

联系电话：010-82250338

乙方（借款人）： Hongkun USA Investment LLC

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212) 257-8885

丙方（担保人一）：刘帆，护照号码：█████████

地址：1222 Anderson ave , Fort Lee, NJ 07024

联系电话：+1(201) 961-5342

丁方（担保人二）：赵伟豪，身份证号：█████████

地址:北京市海淀区东钓鱼台7号院1号楼601号

联系电话：13901125531

戊方（担保人三）Hongkun USA Real Estate Holdings LLC



**HONGKUN**
USA

地址：888 7th Avenue, Floor 28, New York, NY 10019

联系电话：(212)257-8885

（丙方、丁方及戊方三方合称为"担保方"）

鉴于：
甲方为一家于BVI注册的有限公司。乙方及戊方为一家于美国注册的有限公司。

本合同各方根据香港法律、法规规定，经平等、友好协商，就乙方向甲方借款、担保方提供担保事宜达成协议如下：

第 1 条 借款金额：200 万美金（下称"借款"）。

第 2 条 借款期限：

2.1 借款期限自借款实际交付之日起至2020年5月31日止，乙方不得提前还款或逾期。

2.2 借款期限自借款实际交付之日起计算。借款从甲方名下的账户划转至乙方收款账户视为借款实际交付。预期借款起始日将为2020年1月31日。

第 3 条 借款利率及利息

3.1 借款利率为年利率20%。

第 4 条 借款支付与偿还

4.1 甲方应于 2020 年1月31日前将借款本金一次性足额支付到如下账户内。甲方将借款支付到如下帐户后即完成借款交付：

a) 账户名（Account Name）：Hongkun USA Real Estate Holdings LLC

b) 开户行（Bank Name）：Citibank, N.A.



**HONGKUN**
USA

    c)   开户行地址（Bank Address）：2071 Lemoine Ave, Fort Lee, NJ, 07024

    d)   开户人地址（Business Address）：1222 Anderson Ave, Fort Lee, NJ, 07024

    e)   账户号码（Account Number）：█████

    f)   ABA 号码（Routing Number）：021272655

    g)   Swift Code：CITIUS33

    4.2  若乙方发生任何下述事件或基于任何其他原因，甲方有权在发生下述事件后的任何时间或于任何时间宣告全部借款立即到期，并书面要求乙方及担保方立即将借款的任何部份或全部实时清偿：

    (a)  乙方没有按时偿付借款或其任何部份；

    (b)  乙方无能力履行清偿借款或偿还其他债务的责任；

    (c)  乙方在本合同第七条或乙方或其他人士在根据本合同须签订的文件中所作的任何陈述或保证有任何失实、错误或误导；

    (d)  乙方对第三者的借款、担保、赔偿或其他债项，因违约而须提前偿付或到期而不能如期偿付；

    (e)  乙方申请或通过决议或被人申请或因法院或政府机关的命令清盘、破产、指定清盘人、接管人或信托人等人去处理其所有或大部分财产或被法院下令监管财产；

    (f)  乙方受司法或行政部门的判决、裁定或处罚决定所制裁，对其不动产、物业或财产（包括应收款）等有不利的影响，或有受上述制裁的威胁，而该等威胁又不能在发生后三十（30）天内圆满解除；

    (g)  乙方的任何财产被扣押、查封或没收或有被扣押、查封或没收的威胁；

    (h)  乙方的全部财产或任何重要关键部份遭受或可能遭受没收、征用、强制性收购（不论是否有价收购）、或受到损毁破坏，以致甲方认为乙方履行其在本合同下的责任之



能力已受到影响；

(i) 本合同或根据本合同须签订的文件所述的责任在适用法律规范下变得不合法或不可能继续履行；

(j) 乙方因其业务经营前景或其所拥有财产出现不利变化而严重影响其履行本合同所负偿还责任的能力；

(k) 乙方违反本合同（或根据本合同须签订的其他文件）的约定。

4.3 借款期限届满之日，乙方应将借款本金和应付的利息一次性足额支付至甲方指定的账户内。甲方收到全额款项即视为借款还清。

**第 5 条 甲方义务**

5.1 对于在签订、履行本合同的过程中所知悉的乙方的所有信息和资料均应当予以保密；如甲方和乙方认为有必要的，双方应当签订一份保密协议，保密协议中乙方应当遵守的义务构成本合同第 8 条的组成部分。

5.2 甲方应及时足额将借款资金支付至本协议第 4 条约定的乙方收款账户。

**第 6 条 乙方义务**

6.1 乙方对在签订、履行本合同的过程中所知悉的甲方的所有信息和资料均应当予以保密；

6.2 借款到期，乙方应按合同约定向甲方偿还借款。

**第 7 条 陈述与保证**

7.1 甲方的陈述与保证

7.1.1）甲方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

7.1.2）甲方已获得签署本合同所必须的内部审批或授权，不违反适用于甲方的法律、法规、政策和公司章程等规定。



7.2 乙方的陈述与保证

　　7.2.1）乙方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本协议的合法主体资格。

　　7.2.2）乙方已获得签署本合同所必须的内部授权，不违反适用于乙方的法律、法规、政策和公司章程等规定。

　　7.2.3）乙方保证本合同、根据本合同须签立的文件之签署和履行，均不会：

　　　　（i）抵触或违反任何对有关乙方有约束力的法律、命令、协议、章程或任何法院、行政和政府机关颁布的判决、禁令、命令、决定和裁决；及

　　　　（ii）超越有关担保方的保证或担保权限。

　　7.2.4）在任何法院、法庭、仲裁庭或政府机关均没有任何以乙方为当事人或针对其的资产之诉讼、仲裁或行政裁判程序已展开；同时，亦不存在该等诉讼、仲裁或行政裁判程序可能展开的威胁之重要事实或情况。

　　7.2.5）没有任何令或旨在令乙方破产、清盘、解散的法庭命令、申请、法律程序或决议已颁发、提出、展开或通过。

　　7.2.6）乙方向甲方提供关于乙方的所有数据均真实可靠、完全、准确、没有误导成份。

7.3 戊方的陈述与保证

　　7.3.1）戊方是依法设立并合法存续的独立民事主体，具备所有必要的民事权利能力和民事行为能力，具备签署本合同的合法主体资格。

　　7.3.2）戊方已获得签署本合同所必须的内部审批或授权，不违反适用于戊方的法律、法规、政策和公司章程等规定。

**第 8 条 违约责任**

8.1 因一方违约导致另一方采取仲裁方式实现权利的，违约方应承担守约方为此支付的实现权利的费用（包括但不限于律师费、差旅费等）。

8.2 一旦违约（包括但不限于提前还款或逾期还款等），乙方须按照全部应付未付金额按年利率36%的标准向甲方支付违约金，至全部归还完毕甲方本息之日为止。



第 9 条 争议解决

9.1 本合同未尽事宜以及履行本合同所产生的争议，由甲乙双方协商解决，协商不成，通过仲裁解决及处理。

9.2 本合同适用香港法律。

9.3 凡因本合同所引起的或与之相关的任何争议、纠纷、分歧或索赔，包括合同的效力、解释、履行、违反或终止，或因本合同引起的或与之相关的任何非合同性争议，均应提交由香港国际仲裁中心，并按照提交仲裁时有效的《香港国际仲裁中心机构仲裁规则》仲裁，仲裁裁决对本合同各方有约束力，并为终局决定。

第 10 条 合同的生效、变更与解除

10.1 本合同自各方加盖公章且各方法定代表人或其委托代理人签字之日起生效；

10.2 合同生效后，除本合同已有约定以外，任何一方均不得擅自变更或解除本合同；如确需变更或解除本合同，应经各方协商一致，并达成书面协议。

第 11 条 担保条款

11.1 就乙方因本合同条款而引致乙方应偿还甲方的借款、债务、利息欠款和相关费用支出，担保方（即丙方、丁方和戊方）共同地及个别地承担无限连带担保责任。担保方（即丙方、丁方和戊方）承诺及同意在甲方发出要求时共同地及个别地将其相应于该等债务金额的资产抵押给甲方作为偿还借款的担保。

11.2 如乙方未能根据本合同偿还借款，担保方兹共同地及个别地承诺会应甲方要求向甲方偿还(金额不含任何抵销权，并且不负担任何性质的税项的扣减)乙方尚欠的借款本息及其他根据本合同引起的债务或费用。

第 12 条 其他

12.1 各方均保证本合同所载明的通讯地址（包括住所地）、联系方式（包括联系电话、传真、Email 等）真实有效，可以作为对方通知香港国际仲裁中心送达法律文书的确认地址，因载明的地址有误或未及时告知变更后的地址，导致相关材料未能实际被接收的，自材料邮寄后第三日视为送达之日。



12.2  本合同一式伍份，合同各方各执壹份。



HONGKUN
USA

本页无正文，为《借款合同》签字页。

For and on behalf of
Huaxintong International Investment Management Limited
华鑫通国际投资管理有限公司

甲方: 华鑫通国际投资管理有限公司

Authorised Signature(s)

（Huaxintong International Investment Management Limited）

法定代表人或委托代理人：

签字：

Gao Yong Yu    2020 年 1 月 31 日

乙方：

Hongkun USA Investment LLC

CEO: Richard Liu

签字：

2020 年 1 月 31 日

丙方：

刘 帆

签字：

2020 年 1 月 31 日



HONGKUN
USA

丁方：

赵伟豪

签字：

2020 年 1 月 31 日

戊方：

Hongkun USA Real Estate Holdings LLC
CEO: Richard Liu

签字：

2020 年 1 月 31 日

------ ENGLISH TRANSLATION ------

# Loan Contract

Party A (Lender): Huaxintong International Investment Management Limited

Address: P.O. Box 957, Offshore Incorporations Centre, Road Toan, Tortola, British Virgin Islands.

Tel: 010-82250338

Party B (Borrower): Hongkun USA Investment LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212) 257-8885

Party C (Guarantor 1): Liu, Fan, Passport #: █████████

Address: 1222 Anderson ave , Fort Lee, NJ 07024

Tel: +1 (201) 961-5342

------ ENGLISH TRANSLATION ------

Party D (Guarantor 2): Zhao, Weihao

Personal ID: ███████████

Address: No.7 East Diaoyutai, Building 1 Suite 601, Haidian District, Beijing, China

Tel: 13901125531

Party E (Guarantor 3): Hongkun USA Real Estate Holdings LLC

Address: 888 7th Avenue, Floor 28, New York, NY 10019

Tel: (212) 257 – 8885

(Party C, D and E combined is called Guarantor)

WHEREAS:

Party A is a limited company registered in BVI. Party B and E are companies

registered in the United States.

In accordance with the laws and regulations of Hong Kong, all parties to this contract, after equal and friendly negotiation, shall reach an agreement regarding the borrowing of money from Party A by Party B and the provision of guarantees by the Guarantor as follows:

**Article 1 Loan amount:** 2 million US dollars. (Hereinafter referred to as "borrowed money")

**Article 2 The loan period:**

2.1 The loan period is from the date of the actual payment of the borrowed money through May 31, 2020; Party B cannot repay the loan before or after the due date.

2.2 The loan period is calculated from the date of the actual payment of the borrowed money. The transfer of the borrowed money from the account under the name of Party A to the receiving account of Party B shall be regarded as the actual payment of the borrowed money. The expected starting date for borrowing will be January 31, 2021.

**Article 3 Loan Interest Rate and Interest**

3.1 The borrowing interest rate is 20% per annum.

------ ENGLISH TRANSLATION ------

**Article 4 Payment and Repayment of Loan**

4.1 Party A shall pay the principal of the borrowed money in full, in sum to the following account before January 31, 2020. After Party A pays the borrowed money to the following account, the payment of the borrowed money will be completed:

a) Account Name: Hongkun USA Real Estate Holdings LLC

b) Bank Name: Citibank, N.A.

c) Bank Address: 2071 Lemoine Ave, Fort Lee, NJ, 07024

d) Business Address: 1222 Anderson Ave, Fort Lee, NJ, 07024

e) Account Number: ███████

f) ABA Number (Routing Number):021272655

g) Swift Code: CITIUS33

4.2 If any of the following events occur to Party B or for any other reason, Party A has the right to declare all the loans to be due at any time or at any time after the occurrence of the following events, and request in writing that Party B and the guarantor immediately pay any of the loans, partial or full repayment in real-time:

(a) Party B failed to repay the loan or any part of it on time;

(b) Party B is incapable of fulfilling its responsibilities for repaying borrowed money or repaying other debts;

(c) Any statements or guarantees made by Party B in Article 7 of this contract or by Party B or other persons in the documents to be signed under this contract are untrue, false, or misleading;

(d) Party B's borrowings, guarantees, indemnities, or other debts to a third party must be paid in advance due to breach of contract or cannot be repaid as scheduled;

(e) Party B has applied for or passed a resolution, or has been applied for by others, or has been ordered by a court or government agency to liquidate, go bankrupt, designate a liquidator, receiver or trustee, etc. to dispose of its all or most property, or received a restrain and regularly order by the court;

(f) Party B is sanctioned by judicial or administrative judgments, rulings, or penalties, which adversely affects its non-cloud properties, real estate properties, or assets (including receivables), or is threatened by the above-mentioned sanctions. And the threat cannot be successfully resolved within thirty (30) days after it occurs;

(g) Any of Party B's property is seized, sealed up or confiscated or threatened to be seized, sealed up or confiscated;

(h) All of Party B's property or any important part has suffered or may be subject to confiscation, expropriation, compulsory acquisition (regardless of price acquisition), or damage so that Party A believes that Party B's ability to perform its responsibilities under this contract has been affected;

(i) The responsibilities stated in this contract or the documents required to be signed under this contract become illegal or cannot continue to be performed under the applicable laws and regulations;

(j) Party B has a serious impact on its ability to perform its obligations under this contract due to unfavorable changes in its business prospects or its own property

(k) Party B violates this contract (or other documents that must be signed under this contract).

4.3 On the day when the loan period expires, Party B shall pay the principal of the loan and the interest payable in sum to the account designated by Party A. When Party A receives the full amount, it shall be deemed to have been repaid in full.

## Article 5 Party A's Obligations

5.1 All information and materials of Party B known in the process of signing and fulfilling this contract shall be kept confidential; if Party A and Party B deem it necessary, the two parties shall sign the agreement and keep the agreement confidential.

The obligations constitute part of Article 8 of the contract.

5.2 Party A shall pay the borrowed money in full and in time to Party B's collection account as agreed in Article 4 of this agreement.

## Article 6 Party B's Obligations

6.1 Party B shall keep confidential all the information and materials of Party A known to Party B during the process of signing and fulfilling this contract;

6.2 When the loan expires, Party B shall repay the loan to Party A in accordance with the contract agreement.

## Article 7 Statement and Guarantee

7.1 Party A's Statement and Guarantee

7.1.1) Party A is an independent civil subject established and legally existing in accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal subject to sign this contract.

7.1.2) Party A has obtained the necessary internal approval or authorization for signing this contract, and it does not violate the laws, regulations, policies, and company rules applicable to Party A.

7.2 Party B's Statement and Guarantee

7.2.1) Party B is an independent civil subject established and existing legally in accordance with the law, with all necessary civil rights and capabilities and civil conduct capabilities, and a qualified legal principle to sign this agreement.

7.2.2) Party B has obtained the necessary internal authorization to sign this contract, and does not violate the laws, regulations, policies, and company rules applicable to Party B.

7.2.3) Party B guarantees that the signing and execution of this contract and the documents that must be executed in accordance with this contract will not:

    (i) Conflict or violate any laws, orders, agreements, regulations, or any judgments, injunctions, orders, decisions and decisions issued by any court, administrative or government agency that bind Party B; or

    (ii) Exceeding the guarantee or guarantee rights of the relevant guarantor.

7.2.4) In any court, tribunal, arbitration tribunal, or government agency, no litigation, arbitration, or administrative judgment procedure involving Party B or against its assets has commenced; at the same time, there is no such litigation, arbitration, or administrative procedure that may be launched, nor other acts or threats in the same manner.

7.2.5) No court orders, applications, legal procedures, or resolutions that will cause or are intended to cause Party B to bankrupt, wind up, or dissolve have been issued, proposed, opened, or passed.

7.2.6) All the data about Party B provided by Party B to Party A are true, reliable, complete, accurate, and not misleading.

7.3 Party E's Statement and Guarantee

7.3.1) Party E is an independent civil subject established and existing legally in accordance with the law. It has all the necessary civil rights and capabilities and civil conduct capabilities and is a qualified legal subject to sign this contract.

7.3.2) Party E has obtained the necessary internal approval or authorization to sign this contract and does not violate the laws, regulations, policies, and company rules applicable to Party C.


**Article 8 Liability for breach of contract**

8.1 If one party's breach of contract causes the other party to take the arbitration method to realize its rights, the breaching party shall bear the expenses (including but not limited to attorney's fees, travel expenses, etc.) paid by the observant party for the realization of the rights.

8.2 Once the contract is breached (including but not limited to repay earlier or later than due date, etc.), Party B shall pay to Party A damages based on the total unpaid amount at an annual interest rate of 36%, until the date when all the principal and interest are repaid to Party A.


**Article 9 Dispute Resolution.**

9.1 Disputes arising from the implementation of this contract shall be resolved by negotiation between parties A and B. If the negotiation fails, it shall be resolved and dealt with through arbitration.

9.2 The laws of Hong Kong apply to this contract.

9.3 Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.

**Article 10 Validity, Change, and Dissolution of Contract**

10.1 This contract shall take effect from the date when each party affixed the company seal and signed by the representatives or their appointed representatives;

10.2 After the contract becomes effective, no party may change or cancel this contract without authorization, except as stipulated in this contract; if it is really necessary to change or cancel this contract, all parties shall negotiate and reach a written agreement.

**Article 11 Guarantee Terms**

11.1 With regard to Party B's debts, liabilities, interest arrears, and related expenses that Party B will repay to Party A as a result of the terms of this contract, the Guarantor (that is, Party C, Party D, and Party E) shall be jointly and severally liable without limitation. Guarantor (that is, Party C, Party D, and Party E) undertakes and agrees to pledge its assets equal to the amount of the debt to Party A when Party A makes a request as a guarantee for the repayment of the loan.

11.2 If Party B fails to repay the loan in accordance with this contract, the guarantor hereby jointly and severally promise to repay Party A at the request of Party A (the amount does not include any right of set-off, and does not bear any tax deductions of any nature) the principal and interest of the loan still owed by Party B and other debts or expenses arising from this contract.

**Article 12 Others**

12.1 Each party guarantees that the correspondence address (including the place of residence) and contact information (including contact number, fax, Email, etc.) stated in this contract are true and valid, and can be used by the other party as confirmation address for notifying the Hong Kong International Arbitration Center or serving legal documentation. If the specified address is incorrect or the changed address is not notified in time, and the relevant materials cannot be actually received, the third day after the materials are mailed shall be deemed to be the date of delivery.

12.2 There are five copies of this contract, and each party to the contract holds one copy.

------ ENGLISH TRANSLATION ------

There is no official text on this page. It is the signature page of the Loan Contract.

Party A: Huaxintong International Investment Management Limited

Legal representative or entrusted agent:

Signature:

                    2020 Year  1  Month    31  Date

Party B:

Hongkun USA Investment LLC

CEO: Richard Liu

Signature:

                    2020 Year  1  Month    31  Date

Party C:

Fan Liu

Signature:

                    2020 Year  1  Month    31  Date

------ ENGLISH TRANSLATION ------

Party D:
Zhao, Weihao

Signature:

2020 Year  1  Month    31  Date

Party E:
Hongkun USA Real Estate Holdings LLC

CEO: Richard Liu

Signature:

2020 Year  1  Month    31  Date

## CERTIFICATION OF ACCURACY OF TRANSLATION

I, the undersigned, hereby certify Rule 1:4-4(b) that:

I am not a party to the action and am over 18 years old. I am currently working at the New York office of the Plaintiffs' law firm Reid & Wise LLC. I am fluent in both the Chinese and English languages and am competent to translate between Chinese and English. Chinese is my native language. I have studied English for more than twenty years. I have taken law school courses that were taught in English at William and Mary Law School and obtained JD and LLM degrees therefrom. I have been using both Chinese and English as working languages since September 2012.

This is to certify that, to the best of my ability, the English translation of the Chinese words in the foregoing **Exhibit D** is an accurate and complete translation and is equivalent to its original Chinese version.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Zheng Gao

Dated: December 17, 2021

# EXHIBIT E

## IN THE MATTER OF AN ARBITRATION
## UNDER THE 2018 HONG KONG INTERNATIONAL ARBITRATION CENTRE
## ADMINISTERED ARBITRATION RULES

BETWEEN

NEW ASIA (CHINA) INTERNATIONAL GROUP                    Claimant
COMPANY LIMITED (新亞（中國）國際集團有限
公司)


and


HONGKUN USA INVESTMENT LLC                   1st Respondent
北京鴻坤偉業房地產開發有限公司                      2nd Respondent
趙彬                                          3rd Respondent
HONGKUN USA REAL ESTATE HOLDINGS LLC        4th Respondent

────────────────────────

## NOTICE OF ARBITRATION

────────────────────────

6 December 2021
**Anthony Siu & Co.**
Units 1102-3, 11th Floor,
No.9 Queen's Road Central,
Central, Hong Kong
Tel: (852) 2520 6878
Fax: (852) 2520 6877
(Our Ref: TC/AS/SM/JC/4052/21)

1

1. This Notice of Arbitration is issued on behalf of the Claimant, namely New Asia (China) International Group Company Limited, in accordance with Article 4 of the 2018 HKIAC Administered Arbitration Rules ("**Rules**").

## A. Referral to arbitration (Rules §4.3(a))

2. The Claimant requests the dispute outlined in this Notice of Arbitration be referred to arbitration.

## B. Parties (Rules §4.3(b))

3. The name and contact details of the Claimant are as follows:

|  |  |
|---|---|
| English name: | New Asia (China) International Group Company Limited |
| Chinese name: | 新亞（中國）國際集團有限公司 |
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Fax: | (852) 2520 6877 |

4. The Claimant is represented by Anthony Siu & Co. ("**ASC**"), whose details are as follows:

|  |  |
|---|---|
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Contract persons: | Mr Anthony Siu / Ms Jenny Chow |
| Reference number: | TC/AS/SM/JC/4052/21 |
| Telephone: | (852) 2520 6878 |
| Fax: | (852) 2520 6877 |
| Email: | office@anthonysiu.com |

5. The name and contact details of the 1st Respondent are as follows:

|  |  |
|---|---|
| Name: | Hongkun USA Investment LLC |

| | | |
|---|---|---|
| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA | |
| | (2) 16192 Coastal Highway, Lewes, Delaware 19958, USA | |
| | (3) 1222 Anderson Ave, Fort Lee, NJ 07024, USA | |
| Telephone: | (212) 257-8885 | |

6. The name and contact details of the 2nd Respondent are as follows:

| | |
|---|---|
| Name: | 北京鴻坤偉業房地產開發有限公司 |
| Addresses: | (1) 北京大興區欣榮北大街 45 號 1 號樓 1 層室 |
| | (2) 北京市大興區西紅門鎮壽保莊鴻坤金融谷 1 號樓 201-68 |
| Telephone: | 010-60240288 |
| Email: | quying@hongkun.com.cn |

7. The name and contact details of the 3rd Respondent are as follows:

| | |
|---|---|
| Name: | 趙彬 |
| Addresses: | (1) 北京大興區欣榮北大街 45 號 1 號樓 1 層室 |
| | (2) 北京市海淀區翠微路 4 号 3 号楼 2703 号 |
| Telephone: | 010-60240288 |

8. The name and contact details of the 4th Respondent are as follows:

| | |
|---|---|
| Name: | Hongkun USA Real Estate Holdings LLC |
| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA |
| | (2) 1222 Anderson Ave, Fort Lee, NJ 07024, USA |
| | (3) 16192 Coastal Highway, Lewes, Delaware 19958, USA |
| Telephone: | (212) 257-8885 |

C.    **Arbitration Agreements (Rules §4.3(c))**

9.    A valid and binding arbitration agreement between the Claimant and the Respondents governing the dispute (outlined in Section E below) is contained in the loan agreement (借款合同) entered into amongst the Claimant (as lender), the 1st Respondent (as borrower), and the 2nd to 4th Respondents (all as guarantors) on or around 17 February 2019 ("**Loan Agreement**").

10.    Clause 9 of the Loan Agreement provides that:

"*第 9 条 争议解决*

*9.1 本合同未尽事宜以及履行本合同所产生的争议，由甲乙双方协商解决，协商不成，通过仲裁解决及处理。*

*9.2 本合同适用香港法律。*

*9.3 凡因本合同所引起的或与之相关的任何争议、纠纷、分歧或索赔，包括合同的效力、解释、履行、违反或终止，或因本合同引起的或与之相关的任何非合同性争议，均应提交由香港国际仲裁中心，并按照提交仲裁时有效的《香港国际仲裁中心机构仲裁规则》仲裁，仲裁裁决对本合同各方有约束力，并为终局决定。*

Translation:

"*Clause 9 Dispute Resolution*

*9.1    Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.*

*9.2    This Loan Agreement shall be governed by the laws of Hong Kong.*

*9.3    Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award*

*of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement."*

11. A copy of the Loan Agreement is annexed to this Notice of Arbitration as **Exhibit A-1**.

**D. Relevant contract (Rules §4.3(d))**

12. The present dispute arises out of and in relation to the Loan Agreement, a copy of has been annexed hereto as **Exhibit A-1** and to which the Claimant will refer for its full terms and effects.

**E. General nature of claim (Rules §4.3(e))**

13. On or around 20 February 2019, pursuant to the Loan Agreement, the Claimant lent US$3,000,000 ("**Loan**") to the 1st Respondent for a term of 2 years.

14. The Loan Agreement provides:

14.1. in clauses 3.1 and 3.2 that the 1st Respondent shall pay interest at 18% per annum, to be settled as follows:

(a) At every anniversary of the advancement of the Loan, the 1st Respondent shall pay interest on the principal at 10% per annum; and

(b) The remaining accrued interest (together with the principal) shall be settled on the due date of the loan;

14.2. in clause 4.2 that the Claimant has the right to demand full repayment if *inter alia*:

(a) the 1st Respondent defaults in repaying the Loan or any part thereof;

(b)    the 1st Respondent is unable to repay the Loan or any outstanding sum; or

(c)    the 1st Respondent fails to comply with the Loan Agreement;

14.3.    in clause 8.2 that if the 1st Respondent fails to repay any principal or interest, he shall pay liquidated damages on the overdue sum(s) at 36% per annum; and

14.4.    in clause 11 that if the 1st Respondent fails to make any repayment, the 2nd to 4th Respondents shall be jointly and severally liable for all sums owed by the 1st Respondent under the Loan Agreement.

15.    In breach of the Loan Agreement, the 1st Respondent failed to pay interest on the principal at 10% per annum on 19 February 2020, being the first anniversary of the advancement of the Loan.

16.    By a letter dated 16 October 2020, the Claimant exercised its right to demand *inter alia* the 1st Respondent to make full repayment of all outstanding sums under or in relation to the Loan Agreement.

17.    Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment.

18.    Copies of the letters dated 16 October 2020, 19 August 2021 and 26 August 2021 relating to the Loan are annexed hereto as **Exhibit A-2**.

19.    Full particulars of the Claimant's claims will be set out in the Statement of Claim to be filed in due course.

**F.    Relief (Rules §4.3(f))**

20.    The Claimant claims against the 1st to 4th Respondents:

    20.1.    payment of all moneys, interest, liquidated damages and sums due under the Loan Agreement;

    20.2.    all costs, expenses, and fees of and associated with these arbitral proceedings; and

    20.3.    such further or consequential relief as the arbitral tribunal considers appropriate.

21.    The Claimant reserves all its rights, including the right to amend and/or supplement the relief sought.

**G.    Number of Arbitrators (Rules §4.3(g)-(h))**

22.    The parties have not agreed upon the number of arbitrators. The Claimant proposes to refer the present case to a sole arbitrator and await the HKIAC's decision pursuant to Article 6.1 of the Rules.

**H.    No Funding Arrangement (Rules §4.3(i))**

23.    The Claimant confirms that no funding agreement has been made.

**I.    Confirmation of Service (Rules §4.3(j))**

24.    Copies of this Notice of Arbitration including its annexures are being communicated simultaneously to the 1st to 4th Respondents by courier service to the addresses stated in paragraphs 5-8 above and by email to the email address of the 2nd Respondent stated in paragraph 6 above.

**J.     Other matters**

25.    In accordance with Article 4.4 and Schedule 1 of the Rules, this Notice of
       Arbitration is accompanied by a cheque payable to "Hong Kong International
       Arbitration Centre" in the amount of HK$8,000 for payment of the registration fee.

Dated the 6th day of December 2021.

**Anthony Siu & Co.**
Solicitors for the Claimant

------- **ENGLISH TRANSLATION** -------

## IN THE MATTER OF AN ARBITRATION
## UNDER THE 2018 HONG KONG INTERNATIONAL ARBITRATION CENTRE
## ADMINISTERED ARBITRATION RULES

BETWEEN

    NEW ASIA (CHINA) INTERNATIONAL GROUP         Claimant
    COMPANY LIMITED (New Asia (China)
    International Group Company Limited)

        and

    HONGKUN USA INVESTMENT LLC         1st Respondent
Beijing Hongkun Weiye Real Estate Development Co., Ltd.   2nd Respondent
    Zhao, Bin         3rd Respondent
    HONGKUN USA REAL ESTATE HOLDINGS LLC     4th Respondent

---

### NOTICE OF ARBITRATION

---

6 December 2021
**Anthony Siu & Co.**
Units 1102-3, 11th Floor,
No.9 Queen's Road Central,
Central, Hong Kong
Tel: (852) 2520 6878
Fax: (852) 2520 6877
(Our Ref: TC/AS/SM/JC/4052/21)

**------- ENGLISH TRANSLATION -------**

1.  This Notice of Arbitration is issued on behalf of the Claimant, namely New Asia (China) International Group Company Limited, in accordance with Article 4 of the 2018 HKIAC Administered Arbitration Rules ("**Rules**").

**A.    Referral to arbitration (Rules §4.3(a))**

2.  The Claimant requests the dispute outlined in this Notice of Arbitration be referred to arbitration.

**B.    Parties (Rules §4.3(b))**

3.  The name and contact details of the Claimant are as follows:

| | |
|---|---|
| English name: | New Asia (China) International Group Company Limited |
| Chinese name: | New Asia (China) International Group Company Limited |
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Fax: | (852) 2520 6877 |

4.  The Claimant is represented by Anthony Siu & Co. ("**ASC**"), whose details are as follows:

| | |
|---|---|
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Contract persons: | Mr Anthony Siu / Ms Jenny Chow |
| Reference number: | TC/AS/SM/JC/4052/21 |
| Telephone: | (852) 2520 6878 |
| Fax: | (852) 2520 6877 |
| Email: | office@anthonysiu.com |

5.  The name and contact details of the 1st Respondent are as follows:

| | |
|---|---|
| Name: | Hongkun USA Investment LLC |

------- **ENGLISH TRANSLATION** -------

| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA |
| | (2) 16192 Coastal Highway, Lewes, Delaware 19958, USA |
| | (3) 1222 Anderson Ave, Fort Lee, NJ 07024, USA |
| Telephone: | (212) 257-8885 |

6.  The name and contact details of the 2nd Respondent are as follows:

| Name: | jBeijing Hongkun Weiye Real Estate Development Co., Ltd. |
| Addresses: | (1) 1st Floor, Building 1, No. 45, Xinrong North Street, Daxing District, Beijing |
| | (2) 201-68, Building 1, Hongkun Financial Valley, Shoubaozhuang, Xihongmen Town, Daxing District, Beijing |
| Telephone: | 010-60240288 |
| Email: | quying@hongkun.com.cn |

7.  The name and contact details of the 3rd Respondent are as follows:

| Name: | Zhao, Bin |
| Addresses: | (1) 1st Floor, Building 1, No. 45, Xinrong North Street, Daxing District, Beijing |
| | (2) No. 2703, Building 3, No. 4 Cuiwei Road, Haidian District, Beijing |
| Telephone: | 010-60240288 |

8.  The name and contact details of the 4th Respondent are as follows:

| Name: | Hongkun USA Real Estate Holdings LLC |
| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA |
| | (2) 1222 Anderson Ave, Fort Lee, NJ 07024, USA |
| | (3) 16192 Coastal Highway, Lewes, Delaware 19958, USA |
| Telephone: | (212) 257-8885 |

------- **ENGLISH TRANSLATION** -------

### C.   Arbitration Agreements (Rules §4.3(c))

9.   A valid and binding arbitration agreement between the Claimant and the Respondents governing the dispute (outlined in Section E below) is contained in the loan agreement (loan agreement) entered into amongst the Claimant (as lender), the 1st Respondent (as borrower), and the 2nd to 4th Respondents (all as guarantors) on or around 17 February 2019 ("**Loan Agreement**").

10.   Clause 9 of the Loan Agreement provides that:

*Clause 9 Dispute Resolution*

*9. 1 Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.*

*9.2 This Loan Agreement shall be governed by the laws of Hong Kong.*

*9. 3 Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.*

Translation:

*"Clause 9 Dispute Resolution*

*9. 1      Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.*

*9.2      This Loan Agreement shall be governed by the laws of Hong Kong.*

*9.3      Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award*

of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement."

11.  A copy of the Loan Agreement is annexed to this Notice of Arbitration as **Exhibit A-1**.

**D.   Relevant contract (Rules §4.3(d))**

12.  The present dispute arises out of and in relation to the Loan Agreement, a copy of has been annexed hereto as **Exhibit A-1** and to which the Claimant will refer for its full terms and effects.

**E.   General nature of claim (Rules §4.3(e))**

13.  On or around 20 February 2019, pursuant to the Loan Agreement, the Claimant lent US$3,000,000 ("**Loan**") to the 1st Respondent for a term of 2 years.

14.  The Loan Agreement provides:

14.1.   in clauses 3.1 and 3.2 that the 1st Respondent shall pay interest at 18% per annum, to be settled as follows:

(a)   At every anniversary of the advancement of the Loan, the 1st Respondent shall pay interest on the principal at 10% per annum; and

(b)   The remaining accrued interest (together with the principal) shall be settled on the due date of the loan;

14.2.   in clause 4.2 that the Claimant has the right to demand full repayment if *inter alia*:

(a)   the 1st Respondent defaults in repaying the Loan or any part thereof;

------- ENGLISH TRANSLATION -------

(b)   the 1st Respondent is unable to repay the Loan or any outstanding sum; or

(c)   the 1st Respondent fails to comply with the Loan Agreement;

14.3.   in clause 8.2 that if the 1st Respondent fails to repay any principal or interest, he shall pay liquidated damages on the overdue sum(s) at 36% per annum; and

14.4.   in clause 11 that if the 1st Respondent fails to make any repayment, the 2nd to 4th Respondents shall be jointly and severally liable for all sums owed by the 1st Respondent under the Loan Agreement.

15.   In breach of the Loan Agreement, the 1st Respondent failed to pay interest on the principal at 10% per annum on 19 February 2020, being the first anniversary of the advancement of the Loan.

16.   By a letter dated 16 October 2020, the Claimant exercised its right to demand *inter alia* the 1st Respondent to make full repayment of all outstanding sums under or in relation to the Loan Agreement.

17.   Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment.

18.   Copies of the letters dated 16 October 2020, 19 August 2021 and 26 August 2021 relating to the Loan are annexed hereto as **Exhibit A-2**.

19.   Full particulars of the Claimant's claims will be set out in the Statement of Claim to be filed in due course.

------- **ENGLISH TRANSLATION** -------

**F.    Relief (Rules §4.3(f))**

20.    The Claimant claims against the 1st to 4th Respondents:

    20.1.    payment of all moneys, interest, liquidated damages and sums due under the Loan Agreement;

    20.2.    all costs, expenses, and fees of and associated with these arbitral proceedings; and

    20.3.    such further or consequential relief as the arbitral tribunal considers appropriate.

21.    The Claimant reserves all its rights, including the right to amend and/or supplement the relief sought.

**G.    Number of Arbitrators (Rules §4.3(g)-(h))**

22.    The parties have not agreed upon the number of arbitrators. The Claimant proposes to refer the present case to a sole arbitrator and await the HKIAC's decision pursuant to Article 6.1 of the Rules.

**H.    No Funding Arrangement (Rules §4.3(i))**

23.    The Claimant confirms that no funding agreement has been made.

**I.    Confirmation of Service (Rules §4.3(j))**

24.    Copies of this Notice of Arbitration including its annexures are being communicated simultaneously to the 1st to 4th Respondents by courier service to the addresses stated in paragraphs 5-8 above and by email to the email address of the 2nd Respondent stated in paragraph 6 above.

------- **ENGLISH TRANSLATION** -------

**J.    Other matters**

25.    In accordance with Article 4.4 and Schedule 1 of the Rules, this Notice of Arbitration is accompanied by a cheque payable to "Hong Kong International Arbitration Centre" in the amount of HK$8,000 for payment of the registration fee.

Dated the 6th day of December 2021.

**Anthony Siu & Co.**
Solicitors for the Claimant

CERTIFICATION OF ACCURACY OF TRANSLATION

I, the undersigned, hereby certify Rule 1:4-4(b) that:

I am not a party to the action and am over 18 years old. I am currently working at the New York office of the Plaintiffs' law firm Reid & Wise LLC. I am fluent in both the Chinese and English languages and am competent to translate between Chinese and English. Chinese is my native language. I have studied English for more than twenty years. I have taken law school courses that were taught in English at William and Mary Law School and obtained JD and LLM degrees therefrom. I have been using both Chinese and English as working languages since September 2012.

This is to certify that, to the best of my ability, the English translation of the Chinese words in the foregoing **Exhibit E** is an accurate and complete translation and is equivalent to its original Chinese version.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Zheng Gao

Dated: December 17, 2021

# EXHIBIT F

## IN THE MATTER OF AN ARBITRATION
## UNDER THE 2018 HONG KONG INTERNATIONAL ARBITRATION CENTRE
## ADMINISTERED ARBITRATION RULES

BETWEEN

|  |  |
|---|---|
| HUAXINTONG INTERNATIONAL INVESTMENT MANAGEMENT LIMITED (華鑫通國際投資管理有限公司) | Claimant |

and

|  |  |
|---|---|
| HONGKUN USA INVESTMENT LLC | 1st Respondent |
| 北京鴻坤偉業房地產開發有限公司 | 2nd Respondent |
| 趙彬 | 3rd Respondent |
| HONGKUN USA REAL ESTATE HOLDINGS LLC | 4th Respondent |

---

### NOTICE OF ARBITRATION

---

6 December 2021
**Anthony Siu & Co.**
Units 1102-3, 11th Floor,
No.9 Queen's Road Central,
Central, Hong Kong
Tel: (852) 2520 6878
Fax: (852) 2520 6877
(Our Ref: TC/AS/SM/JC/4052/21)

1

1.  This Notice of Arbitration is issued on behalf of the Claimant, namely Huaxingtong International Investment Management Limited, in accordance with Article 4 of the 2018 HKIAC Administered Arbitration Rules ("**Rules**").

**A.   Referral to arbitration (Rules §4.3(a))**

2.  The Claimant requests the dispute outlined in this Notice of Arbitration be referred to arbitration.

**B.   Parties (Rules §4.3(b))**

3.  The name and contract details of the Claimant are as follows:

| | |
|---|---|
| English name: | Huaxingtong International Investment Management Limited |
| Chinese name: | 華鑫通國際投資管理有限公司 |
| Address: | P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands |
| Fax: | (852) 2520 6877 |

4.  The Claimant is represented by Anthony Siu & Co. ("**ASC**"), whose details are as follows:

| | |
|---|---|
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Contract persons: | Mr Anthony Siu / Ms Jenny Chow |
| Reference number: | TC/AS/SM/JC/4052/21 |
| Telephone: | (852) 2520 6878 |
| Fax: | (852) 2520 6877 |
| Email: | office@anthonysiu.com |

5.  The name and contact details of the 1st Respondent are as follows:

Name:        Hongkun USA Investment LLC

Addresses:      (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA

                        (2) 16192 Coastal Highway, Lewes, Delaware 19958, USA

                        (3) 1222 Anderson Ave, Fort Lee, NJ 07024, USA

Telephone:      (212) 257-8885

6.      The name and contact details of the 2nd Respondent are as follows:

Name:        北京鴻坤偉業房地產開發有限公司

Addresses:      (1) 北京大興區欣榮北大街 45 號 1 號樓 1 層室

                        (2) 北京市大興區西紅門鎮壽保莊鴻坤金融谷 1 號樓 201-68

Telephone:      010-60240288

Email:          quying@hongkun.com.cn

7.      The name and contact details of the 3rd Respondent are as follows:

Name:        趙彬

Addresses:      (1) 北京大興區欣榮北大街 45 號 1 號樓 1 層室

                        (2) 北京市海淀區翠微路 4 号 3 号楼 2703 号

Telephone:      010-60240288

8.      The name and contact details of the 4th Respondent are as follows:

Name:        Hongkun USA Real Estate Holdings LLC

Addresses:      (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA

                        (2) 1222 Anderson Ave, Fort Lee, NJ 07024, USA

                        (3) 16192 Coastal Highway, Lewes, Delaware 19958, USA

Telephone:      (212) 257-8885

C.    **Arbitration Agreements (Rules §4.3(c))**

9.    A valid and binding arbitration agreement between the Claimant and the
      Respondents governing the dispute (outlined in Section E below) is contained in:

    9.1.    the loan agreement (借款合同) entered into amongst the Claimant (as
         lender), the 1st Respondent (as borrower), and the 2nd to 4th
         Respondents (all as guarantors) on or around 30 April 2019 ("**April
         2019 Loan Agreement**"); and

    9.2.    the loan agreement (借款合同) entered into amongst the Claimant (as
         lender), the 1st Respondent (as borrower), and the 2nd to 4th
         Respondents (as guarantors) on or around 24 May 2019 ("**May 2019
         Loan Agreement**" and collectively "**Loan Agreements**").

10.   Clause 9 of each of the Loan Agreements provides that:

*"第9条 争议解决*

*9.1 本合同未尽事宜以及履行本合同所产生的争议，由甲乙双方协商解决，协商
不成，通过仲裁解决及处理。*

*9.2 本合同适用香港法律。*

*9.3 凡因本合同所引起的或与之相关的任何争议、纠纷、分歧或索赔，包括合同
的效力、解释、履行、违反或终止，或因本合同引起的或与之相关的任何非合同
性争议，均应提交由香港国际仲裁中心，并按照提交仲裁时有效的《香港国际仲
裁中心机构仲裁规则》仲裁，仲裁裁决对本合同各方有约束力，并为终局决定。*

Translation:

*"Clause 9 Dispute Resolution*

*9.1      Any dispute arising out of the outstanding issues and/or the performance
of this Loan Agreement will first be resolved by negotiation, failing which the
dispute shall be resolved and dealt with by arbitration.*

9.2     This Loan Agreement shall be governed by the laws of Hong Kong.

9.3     Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement."

11.   Copies of the Loan Agreements are annexed to this Notice of Arbitration as **Exhibit A-1**.

## D.   Relevant contracts (Rules §4.3(d))

12.   The present dispute arises out of and in relation to:

12.1.   the Loan Agreements, copies of which are annexed hereto as **Exhibit A-1**;

12.2.   the 2 written agreements entered amongst the Claimant and the Respondents, executed on or around 29 May 2019 or 6 July 2019 respectively, which were supplemental to the May 2019 Loan Agreement ("**Supplemental Agreements**"), copes of which are annexed hereto as **Exhibit A-2**.

13.   The Claimant will refer to the Loan Agreements and the Supplemental Agreements for their full terms and effects.

## E.   General nature of claim (Rules §4.3(e))

E1.   April 2019 Loan Agreement

14. On or around 6 May 2019, pursuant to the April 2019 Loan Agreement, the Claimant lent US$5,000,000 ("**April 2019 Loan**") to the 1st Respondent for a term of 2 years.

15. The April 2019 Loan Agreement provides:

    15.1. in clauses 3.1 and 3.2 that the 1st Respondent shall pay interest at 18% per annum, to be settled as follows:

        (a) At every anniversary of the advancement of the April 2019 Loan, the 1st Respondent shall pay interest on the principal at 10% per annum; and

        (b) The remaining accrued interest (together with the principal) shall be settled on the due date of the loan;

    15.2. in clause 4.2 that the Claimant has the right to demand full repayment if *inter alia*:

        (a) the 1st Respondent defaults in repaying the April 2019 Loan or any part thereof;

        (b) the 1st Respondent is unable to repay the April 2019 Loan or any outstanding sum; or

        (c) the 1st Respondent fails to comply with the April 2019 Loan Agreement;

    15.3. in clause 8.2 that if the 1st Respondent fails to repay any principal or interest, he shall pay liquidated damages on the overdue sum(s) at 36% per annum; and

15.4. in clause 11 that if the 1st Respondent fails to make any repayment, the 2nd to 4th Respondents shall be jointly and severally liable for all sums owed by the 1st Respondent under the April 2019 Loan Agreement.

16. In breach of the April 2019 Loan Agreement, the 1st Respondent failed to pay interest on the principal at 10% per annum on 5 May 2020, being the first anniversary of the advancement of the April 2019 Loan.

17. By a letter dated 16 October 2020, the Claimant exercised its right to demand *inter alia* the 1st Respondent to make full repayment of all outstanding sums under or in relation to the April 2019 Loan Agreement.

18. Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment in respect of the April 2019 Loan.

19. Copies of the letters dated 16 October 2020, 19 August 2021 and 26 August 2021 relating to the April 2019 Loan are annexed hereto as **Exhibit A-3**.

E2. May Loan Agreement

20. On or around 28 May 2019, pursuant to the May 2019 Loan Agreement, the Claimant lent US$5,000,000 ("**May 2019 Loan**") to the 1st Respondent for 30 days.

21. By virtue of the Supplemental Agreements, the due date of the May 2019 Loan was extended to 4 October 2019.

22. The May 2019 Loan Agreement:

22.1. provides in clause 3.1 that the 1st Respondent shall pay interest at 20% per annum;

22.2.    contains clauses that are materially identical to those stated in paragraphs 15.2-15.4 above.

23.   Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment in respect of the May 2019 Loan, whether on 4 October 2019 or anytime thereafter.

24.   Copies of the letters dated 19 August 2021 and 26 August 2021 relating to the May 2019 Loan are annexed hereto as **Exhibit A-4**.

25.   Full particulars of the Claimant's claims will be set out in the Statement of Claim to be filed in due course.

**F.    Relief (Rules §4.3(f))**

26.   The Claimant claims against the 1st to 4th Respondents:

26.1.    payment of all moneys, interest, liquidated damages and sums due to the Claimant under the Loan Agreements and Supplemental Agreements;

26.2.    all costs, expenses, and fees of and associated with these arbitral proceedings; and

26.3.    such further or consequential relief as the arbitral tribunal considers appropriate.

27.   The Claimant reserves all its rights, including the right to amend and/or supplement the relief sought.

G.    **Number of Arbitrators (Rules §4.3(g)-(h))**

28.   The parties have not agreed upon the number of arbitrators. The Claimant proposes to refer the present case to a sole arbitrator and await the HKIAC's decision pursuant to Article 6.1 of the Rules.

H.    **No Funding Arrangement (Rules §4.3(i))**

29.   The Claimant confirms that no funding agreement has been made.

I.    **Confirmation of Service (Rules §4.3(j))**

30.   Copies of this Notice of Arbitration including its annexures are being communicated simultaneously to the 1st to 4th Respondents by courier service to the addresses stated in paragraphs 5-8 above and by email to the email address of the 2nd Respondent stated in paragraph 6 above.

J.    **Other matters**

31.   In accordance with Article 4.4 and Schedule 1 of the Rules, this Notice of Arbitration is accompanied by a cheque payable to "Hong Kong International Arbitration Centre" in the amount of HK$8,000 for payment of the registration fee.

32.   Insofar as necessary, the Claimant will rely on Article 29 of the Rules (Single Arbitration under Multiple Contracts).

Dated the 6th day of December 2021.

Anthony Siu & Co.
Solicitors for the Claimant

9

------- **ENGLISH TRANSLATION** -------

<u>**IN THE MATTER OF AN ARBITRATION**</u>
<u>**UNDER THE 2018 HONG KONG INTERNATIONAL ARBITRATION CENTRE**</u>
<u>**ADMINISTERED ARBITRATION RULES**</u>

BETWEEN

|  |  |
|---|---|
| HUAXINTONG INTERNATIONAL INVESTMENT MANAGEMENT LIMITED (Huaxingtong International Investment Management Limited) | Claimant |

and

| | |
|---|---|
| HONGKUN USA INVESTMENT LLC | 1st Respondent |
| Beijing Hongkun Weiye Real Estate Development Co., Ltd. | 2nd Respondent |
| Zhao, Bin | 3rd Respondent |
| HONGKUN USA REAL ESTATE HOLDINGS LLC | 4th Respondent |

---

**NOTICE OF ARBITRATION**

---

6 December 2021
**Anthony Siu & Co.**
Units 1102-3, 11th Floor,
No.9 Queen's Road Central,
Central, Hong Kong
Tel: (852) 2520 6878
Fax: (852) 2520 6877
(Our Ref: TC/AS/SM/JC/4052/21)

**------- ENGLISH TRANSLATION -------**

1.  This Notice of Arbitration is issued on behalf of the Claimant, namely Huaxingtong International Investment Management Limited, in accordance with Article 4 of the 2018 HKIAC Administered Arbitration Rules ("**Rules**").

## A.   Referral to arbitration (Rules §4.3(a))

2.  The Claimant requests the dispute outlined in this Notice of Arbitration be referred to arbitration.

## B.   Parties (Rules §4.3(b))

3.  The name and contract details of the Claimant are as follows:

| | |
|---|---|
| English name: | Huaxingtong International Investment Management Limited |
| Chinese name: | Huaxingtong International Investment Management Limited |
| Address: | P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands |
| Fax: | (852) 2520 6877 |

4.  The Claimant is represented by Anthony Siu & Co. ("**ASC**"), whose details are as follows:

| | |
|---|---|
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Contract persons: | Mr Anthony Siu / Ms Jenny Chow |
| Reference number: | TC/AS/SM/JC/4052/21 |
| Telephone: | (852) 2520 6878 |
| Fax: | (852) 2520 6877 |
| Email: | office@anthonysiu.com |

5.  The name and contact details of the 1st Respondent are as follows:

------- **ENGLISH TRANSLATION** -------

| | |
|---|---|
| Name: | Hongkun USA Investment LLC |
| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA |
| | (2) 16192 Coastal Highway, Lewes, Delaware 19958, USA |
| | (3) 1222 Anderson Ave, Fort Lee, NJ 07024, USA |
| Telephone: | (212) 257-8885 |

6.   The name and contact details of the 2nd Respondent are as follows:

| | |
|---|---|
| Name: | Beijing Hongkun Weiye Real Estate Development Co., Ltd. |
| Addresses: | (1) 1st Floor, Building 1, No. 45, Xinrong North Street, Daxing District, Beijing |
| | (2) 201-68, Building 1, Hongkun Financial Valley, Shoubaozhuang, Xihongmen Town, Daxing District, Beijing |
| Telephone: | 010-60240288 |
| Email: | quying@hongkun.com.cn |

7.   The name and contact details of the 3rd Respondent are as follows:

| | |
|---|---|
| Name: | Zhao, Bin |
| Addresses: | (1) 1st Floor, Building 1, No. 45, Xinrong North Street, Daxing District, Beijing |
| | (2) No. 2703, Building 3, No. 4 Cuiwei Road, Haidian District, Beijing |
| Telephone: | 010-60240288 |

8.   The name and contact details of the 4th Respondent are as follows:

| | |
|---|---|
| Name: | Hongkun USA Real Estate Holdings LLC |
| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA |
| | (2) 1222 Anderson Ave, Fort Lee, NJ 07024, USA |
| | (3) 16192 Coastal Highway, Lewes, Delaware 19958, USA |
| Telephone: | (212) 257-8885 |

### C.    Arbitration Agreements (Rules §4.3(c))

9.    A valid and binding arbitration agreement between the Claimant and the Respondents governing the dispute (outlined in Section E below) is contained in:

   9.1.    the loan agreement (loan agreement) entered into amongst the Claimant (as lender), the 1st Respondent (as borrower), and the 2nd to 4th Respondents (all as guarantors) on or around 30 April 2019 ("**April 2019 Loan Agreement**"); and

   9.2.    the loan agreement (loan agreement) entered into amongst the Claimant (as lender), the 1st Respondent (as borrower), and the 2nd to 4th Respondents (as guarantors) on or around 24 May 2019 ("**May 2019 Loan Agreement**" and collectively "**Loan Agreements**").

10.    Clause 9 of each of the Loan Agreements provides that:

*Clause 9 Dispute Resolution*

*9.1     Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.*

*9.2 This Loan Agreement shall be governed by the laws of Hong Kong.*

*9. 3 Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, petformance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HK/AC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal  shall be final and binding on the parties to this Loan Agreement.*

*Translation:*

*"Clause 9 Dispute Resolution*
*9. 1 Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.*

*9.2      This Loan Agreement shall be governed by the laws of Hong Kong.*

*9.3      Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement."*

11.   Copies of the Loan Agreements are annexed to this Notice of Arbitration as **Exhibit A-1**.

**D.    Relevant contracts (Rules §4.3(d))**

12.   The present dispute arises out of and in relation to:

12.1.   the Loan Agreements, copies of which are annexed hereto as **Exhibit A-1**;

12.2.   the 2 written agreements entered amongst the Claimant and the Respondents, executed on or around 29 May 2019 or 6 July 2019 respectively, which were supplemental to the May 2019 Loan Agreement ("**Supplemental Agreements**"), copes of which are annexed hereto as **Exhibit A-2**.

13.   The Claimant will refer to the Loan Agreements and the Supplemental Agreements for their full terms and effects.

**E.    General nature of claim (Rules §4.3(e))**

E1.   April 2019 Loan Agreement

------- **ENGLISH TRANSLATION** -------

14.   On or around 6 May 2019, pursuant to the April 2019 Loan Agreement, the Claimant lent US$5,000,000 ("**April 2019 Loan**") to the 1st Respondent for a term of 2 years.

15.   The April 2019 Loan Agreement provides:

15.1.   in clauses 3.1 and 3.2 that the 1st Respondent shall pay interest at 18% per annum, to be settled as follows:

(a)   At every anniversary of the advancement of the April 2019 Loan, the 1st Respondent shall pay interest on the principal at 10% per annum; and

(b)   The remaining accrued interest (together with the principal) shall be settled on the due date of the loan;

15.2.   in clause 4.2 that the Claimant has the right to demand full repayment if *inter alia*:

(a)   the 1st Respondent defaults in repaying the April 2019 Loan or any part thereof;

(b)   the 1st Respondent is unable to repay the April 2019 Loan or any outstanding sum; or

(c)   the 1st Respondent fails to comply with the April 2019 Loan Agreement;

15.3.   in clause 8.2 that if the 1st Respondent fails to repay any principal or interest, he shall pay liquidated damages on the overdue sum(s) at 36% per annum; and

15.4.    in clause 11 that if the 1st Respondent fails to make any repayment, the 2nd to 4th Respondents shall be jointly and severally liable for all sums owed by the 1st Respondent under the April 2019 Loan Agreement.

16.    In breach of the April 2019 Loan Agreement, the 1st Respondent failed to pay interest on the principal at 10% per annum on 5 May 2020, being the first anniversary of the advancement of the April 2019 Loan.

17.    By a letter dated 16 October 2020, the Claimant exercised its right to demand *inter alia* the 1st Respondent to make full repayment of all outstanding sums under or in relation to the April 2019 Loan Agreement.

18.    Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment in respect of the April 2019 Loan.

19.    Copies of the letters dated 16 October 2020, 19 August 2021 and 26 August 2021 relating to the April 2019 Loan are annexed hereto as **Exhibit A-3**.

E2.    May Loan Agreement

20.    On or around 28 May 2019, pursuant to the May 2019 Loan Agreement, the Claimant lent US$5,000,000 ("**May 2019 Loan**") to the 1st Respondent for 30 days.

21.    By virtue of the Supplemental Agreements, the due date of the May 2019 Loan was extended to 4 October 2019.

22.    The May 2019 Loan Agreement:

22.1.    provides in clause 3.1 that the 1st Respondent shall pay interest at 20% per annum;

22.2. contains clauses that are materially identical to those stated in paragraphs 15.2-15.4 above.

23. Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment in respect of the May 2019 Loan, whether on 4 October 2019 or anytime thereafter.

24. Copies of the letters dated 19 August 2021 and 26 August 2021 relating to the May 2019 Loan are annexed hereto as **Exhibit A-4**.

25. Full particulars of the Claimant's claims will be set out in the Statement of Claim to be filed in due course.

**F.   Relief (Rules §4.3(f))**

26. The Claimant claims against the 1st to 4th Respondents:

26.1. payment of all moneys, interest, liquidated damages and sums due to the Claimant under the Loan Agreements and Supplemental Agreements;

26.2. all costs, expenses, and fees of and associated with these arbitral proceedings; and

26.3. such further or consequential relief as the arbitral tribunal considers appropriate.

27. The Claimant reserves all its rights, including the right to amend and/or supplement the relief sought.

------- **ENGLISH TRANSLATION** -------

**G.    Number of Arbitrators (Rules §4.3(g)-(h))**

28.  The parties have not agreed upon the number of arbitrators. The Claimant proposes to refer the present case to a sole arbitrator and await the HKIAC's decision pursuant to Article 6.1 of the Rules.

**H.    No Funding Arrangement (Rules §4.3(i))**

29.  The Claimant confirms that no funding agreement has been made.

**I.    Confirmation of Service (Rules §4.3(j))**

30.  Copies of this Notice of Arbitration including its annexures are being communicated simultaneously to the 1st to 4th Respondents by courier service to the addresses stated in paragraphs 5-8 above and by email to the email address of the 2nd Respondent stated in paragraph 6 above.

**J.    Other matters**

31.  In accordance with Article 4.4 and Schedule 1 of the Rules, this Notice of Arbitration is accompanied by a cheque payable to "Hong Kong International Arbitration Centre" in the amount of HK$8,000 for payment of the registration fee.

32.  Insofar as necessary, the Claimant will rely on Article 29 of the Rules (Single Arbitration under Multiple Contracts).

Dated the 6th day of December 2021.

**Anthony Siu & Co.**
Solicitors for the Claimant

CERTIFICATION OF ACCURACY OF TRANSLATION

I, the undersigned, hereby certify Rule 1:4-4(b) that:

I am not a party to the action and am over 18 years old. I am currently working at the New York office of the Plaintiffs' law firm Reid & Wise LLC. I am fluent in both the Chinese and English languages and am competent to translate between Chinese and English. Chinese is my native language. I have studied English for more than twenty years. I have taken law school courses that were taught in English at William and Mary Law School and obtained JD and LLM degrees therefrom. I have been using both Chinese and English as working languages since September 2012.

This is to certify that, to the best of my ability, the English translation of the Chinese words in the foregoing **Exhibit F** is an accurate and complete translation and is equivalent to its original Chinese version.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Zheng Gao

Dated: December 17, 2021

# EXHIBIT G

# IN THE MATTER OF AN ARBITRATION
## UNDER THE 2018 HONG KONG INTERNATIONAL ARBITRATION CENTRE
## ADMINISTERED ARBITRATION RULES

BETWEEN

|  |  |
|---|---|
| HUAXINTONG INTERNATIONAL INVESTMENT MANAGEMENT LIMITED (華鑫通國際投資管理有限公司) | Claimant |

and

| | |
|---|---|
| HONGKUN USA INVESTMENT LLC | 1st Respondent |
| 劉帆 | 2nd Respondent |
| 趙偉豪 | 3rd Respondent |
| HONGKUN USA REAL ESTATE HOLDINGS LLC | 4th Respondent |

---

## NOTICE OF ARBITRATION

---

6 December 2021

**Anthony Siu & Co.**

Units 1102-3, 11th Floor,

No.9 Queen's Road Central,

Central, Hong Kong

Tel: (852) 2520 6878

Fax: (852) 2520 6877

(Our Ref: TC/AS/SM/JC/3933/21)

1. This Notice of Arbitration is issued on behalf of the Claimant, namely Huaxingtong International Investment Management Limited, in accordance with Article 4 of the 2018 HKIAC Administered Arbitration Rules ("**Rules**").

## A. Referral to arbitration (Rules §4.3(a))

2. The Claimant requests the dispute outlined in this Notice of Arbitration be referred to arbitration.

## B. Parties (Rules §4.3(b))

3. The name and contract details of the Claimant are as follows:

| | |
|---|---|
| English name: | Huaxingtong International Investment Management Limited |
| Chinese name: | 華鑫通國際投資管理有限公司 |
| Address: | P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands |
| Fax: | (852) 2520 6877 |

4. The Claimant is represented by Anthony Siu & Co. ("**ASC**"), whose details are as follows:

| | |
|---|---|
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Contract persons: | Mr Anthony Siu / Ms Jenny Chow |
| Reference number: | TC/AS/SM/JC/3933/21 |
| Telephone: | (852) 2520 6878 |
| Fax: | (852) 2520 6877 |
| Email: | office@anthonysiu.com |

5. The name and contact details of the 1st Respondent are as follows:

| Name: | Hongkun USA Investment LLC |
|---|---|
| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA |
| | (2) 16192 Coastal Highway, Lewes, Delaware 19958, USA |
| | (3) 1222 Anderson Ave, Fort Lee, NJ 07024, USA |
| Telephone: | (212) 257-8885 |

6.  The name and contact details of the 2nd Respondent are as follows:

| Name: | 劉帆 |
|---|---|
| Address: | 1222 Anderson Ave, Fort Lee, NJ 07024 |
| Telephone: | +1 (201) 961-5342 |

7.  The name and contact details of the 3rd Respondent are as follows:

| Name: | 趙偉蒙 |
|---|---|
| Address: | 北京市海淀區東釣魚臺 7 號院 1 號樓 601 號 |
| Telephone: | 13901125531 |

8.  The name and contact details of the 4th Respondent are as follows:

| Name: | Hongkun USA Real Estate Holdings LLC |
|---|---|
| Addresses: | (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA |
| | (2) 1222 Anderson Ave, Fort Lee, NJ 07024, USA |
| | (3) 16192 Coastal Highway, Lewes, Delaware 19958, USA |
| Telephone: | (212) 257-8885 |

## C.   Arbitration Agreements (Rules §4.3(c))

9.  A valid and binding arbitration agreement between the Claimant and the Respondents governing the dispute (outlined in Section E below) is contained in the loan agreement (借款合同) entered into amongst the Claimant (as lender), the 1st Respondent (as borrower), and the 2nd to 4th Respondents (all as guarantors) on or around 31 January 2020 ("**Loan Agreement**").

10.   Clause 9 of the Loan Agreement provides that:

"第9条 争议解决

9.1 本合同未尽事宜以及履行本合同所产生的争议，由甲乙双方协商解决，协商不成，通过仲裁解决及处理。

9.2 本合同适用香港法律。

9.3 凡因本合同所引起的或与之相关的任何争议、纠纷、分歧或索赔，包括合同的效力、解释、履行、违反或终止，或因本合同引起的或与之相关的任何非合同性争议，均应提交由香港国际仲裁中心，并按照提交仲裁时有效的《香港国际仲裁中心机构仲裁规则》仲裁，仲裁裁决对本合同各方有约束力，并为终局决定。

Translation:

"Clause 9 Dispute Resolution

9.1      Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.

9.2      This Loan Agreement shall be governed by the laws of Hong Kong.

9.3      Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement."

11.   A copy of the Loan Agreement is annexed to this Notice of Arbitration as **Exhibit A-1**.

**D.   Relevant contract (Rules §4.3(d))**

12.   The present dispute arises out of and in relation to the Loan Agreement, a copy of which has been annexed hereto as **Exhibit A-1** and to which the Claimant will refer for its full terms and effect.

**E.   General nature of claim (Rules §4.3(e))**

13.   On or around 31 January 2020, pursuant to the Loan Agreement, the Claimant lent US\$2,000,000 ("**Loan**") to the 1st Respondent for a term up to 31 May 2020.

14.   The Loan Agreement provides:

14.1.   in clauses 3 that the 1st Respondent shall pay interest at 20% per annum;

14.2.   in clause 4.2 that the Claimant has the right to demand full repayment if *inter alia*:

(a)   the 1st Respondent defaults in repaying the Loan or any part thereof;

(b)   the 1st Respondent is unable to repay the Loan or any outstanding sum; or

(c)   the 1st Respondent fails to comply with the Loan Agreement;

14.3.   in clause 8.2 that if the 1st Respondent fails to repay any principal or interest, he shall pay liquidated damages on the overdue sum(s) at 36% per annum; and

14.4.   in clause 11 that if the 1st Respondent fails to make any repayment, the 2nd to 4th Respondents shall be jointly and severally liable for all sums owed by the 1st Respondent under the Loan Agreement.

15. Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment in respect of the Loan, whether on 31 May 2020 or anytime thereafter.

16. Copies of the letters dated 19 August 2021 and 26 August 2021 relating to the Loan are annexed hereto as **Exhibit A-2**.

17. Full particulars of the Claimant's claims will be set out in the Statement of Claim to be filed in due course.

**F.    Relief (Rules §4.3(f))**

18. The Claimant claims against the 1st to 4th Respondents:

    18.1.    payment of all moneys, interest, liquidated damages and sums due to the Claimant under the Loan Agreement;

    18.2.    all costs, expenses, and fees of and associated with these arbitral proceedings; and

    18.3.    such further or consequential relief as the arbitral tribunal considers appropriate.

19. The Claimant reserves all its rights, including the right to amend and/or supplement the relief sought.

**G.    Number of Arbitrators (Rules §4.3(g)-(h))**

20. The parties have not agreed upon the number of arbitrators. The Claimant proposes to refer the present case to a sole arbitrator and await the HKIAC's decision pursuant to Article 6.1 of the Rules.

**H.  No Funding Arrangement (Rules §4.3(i))**

21.  The Claimant confirms that no funding agreement has been made.

**I.  Confirmation of Service (Rules §4.3(j))**

22.  Copies of this Notice of Arbitration including its annexures are being communicated simultaneously to the 1st to 4th Respondents by courier service to the addresses stated in paragraphs 5-8 above.

**J.  Other matters**

23.  In accordance with Article 4.4 and Schedule 1 of the Rules, this Notice of Arbitration is accompanied by a cheque payable to "Hong Kong International Arbitration Centre" in the amount of HK$8,000 for payment of the registration fee.

Dated the 6th day of December 2021.

**Anthony Siu & Co.**
Solicitors for the Claimant

------- **ENGLISH TRANSLATION** -------

## IN THE MATTER OF AN ARBITRATION

## UNDER THE 2018 HONG KONG INTERNATIONAL ARBITRATION CENTRE

## ADMINISTERED ARBITRATION RULES

BETWEEN

| | |
|---|---|
| HUAXINTONG INTERNATIONAL INVESTMENT MANAGEMENT LIMITED (Huaxingtong International Investment Management Limited) | Claimant |

and

| | |
|---|---|
| HONGKUN USA INVESTMENT LLC | 1st Respondent |
| Liu, Fan | 2nd Respondent |
| Zhao, Weihao | 3rd Respondent |
| HONGKUN USA REAL ESTATE HOLDINGS LLC | 4th Respondent |

---

### NOTICE OF ARBITRATION

---

6 December 2021

**Anthony Siu & Co.**

Units 1102-3, 11th Floor,

No.9 Queen's Road Central,

Central, Hong Kong

Tel: (852) 2520 6878

Fax: (852) 2520 6877

(Our Ref: TC/AS/SM/JC/3933/21)

------- **ENGLISH TRANSLATION** -------

1.  This Notice of Arbitration is issued on behalf of the Claimant, namely Huaxingtong International Investment Management Limited, in accordance with Article 4 of the 2018 HKIAC Administered Arbitration Rules ("**Rules**").

**A.    Referral to arbitration (Rules §4.3(a))**

2.  The Claimant requests the dispute outlined in this Notice of Arbitration be referred to arbitration.

**B.    Parties (Rules §4.3(b))**

3.  The name and contract details of the Claimant are as follows:

| | |
|---|---|
| English name: | Huaxingtong International Investment Management Limited |
| Chinese name: | Huaxingtong International Investment Management Limited |
| Address: | P.O. Box 957, Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands |
| Fax: | (852) 2520 6877 |

4.  The Claimant is represented by Anthony Siu & Co. ("**ASC**"), whose details are as follows:

| | |
|---|---|
| Address: | Units 1102-3, 11th Floor, No.9 Queen's Road Central, Central, Hong Kong |
| Contract persons: | Mr Anthony Siu / Ms Jenny Chow |
| Reference number: | TC/AS/SM/JC/3933/21 |
| Telephone: | (852) 2520 6878 |
| Fax: | (852) 2520 6877 |
| Email: | office@anthonysiu.com |

5.  The name and contact details of the 1st Respondent are as follows:

Name:      Hongkun USA Investment LLC

Addresses:    (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA

                  (2) 16192 Coastal Highway, Lewes, Delaware 19958, USA

                  (3) 1222 Anderson Ave, Fort Lee, NJ 07024, USA

Telephone:    (212) 257-8885

6.    The name and contact details of the 2nd Respondent are as follows:

Name:      Liu, Fan

Address:      1222 Anderson Ave, Fort Lee, NJ 07024

Telephone:    +1 (201) 961-5342

7.    The name and contact details of the 3rd Respondent are as follows:

Name:      Zhao, Weihao

Address:      No. 601, Building 1, No. 7 East Diaoyutai, Haidian District, Beijing

Telephone:    13901125531

8.    The name and contact details of the 4th Respondent are as follows:

Name:      Hongkun USA Real Estate Holdings LLC

Addresses:    (1) 888 7th Avenue, Floor 28, New York, NY 10019, USA

                  (2) 1222 Anderson Ave, Fort Lee, NJ 07024, USA

                  (3) 16192 Coastal Highway, Lewes, Delaware 19958, USA

Telephone:    (212) 257-8885

## C.    Arbitration Agreements (Rules §4.3(c))

9.    A valid and binding arbitration agreement between the Claimant and the Respondents governing the dispute (outlined in Section E below) is contained in the loan agreement (loan agreement) entered into amongst the Claimant (as lender), the 1st Respondent (as borrower), and the 2nd to 4th Respondents (all as guarantors) on or around 31 January 2020 ("**Loan Agreement**").

10. Clause 9 of the Loan Agreement provides that:

"*Clause 9 Dispute Resolution*

*9.1     Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.*

*9.2     This Loan Agreement shall be governed by the laws of Hong Kong.*

*9. 3 Any dispute, controversy, disagreement or claim arising out of, or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of, or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.*"

*Translation:*

" *Clause 9 Dispute Resolution*

*9.1 Any dispute arising out of the outstanding issues and/or the performance of this Loan Agreement will first be resolved by negotiation, failing which the dispute shall be resolved and dealt with by arbitration.*

*9.2     This Loan Agreement shall be governed by the laws of Hong Kong.*

*9.3     Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.*"

11. A copy of the Loan Agreement is annexed to this Notice of Arbitration as **Exhibit A-1**.

**D.  Relevant contract (Rules §4.3(d))**

12.  The present dispute arises out of and in relation to the Loan Agreement, a copy of which has been annexed hereto as **Exhibit A-1** and to which the Claimant will refer for its full terms and effect.

**E.  General nature of claim (Rules §4.3(e))**

13.  On or around 31 January 2020, pursuant to the Loan Agreement, the Claimant lent US$2,000,000 ("**Loan**") to the 1st Respondent for a term up to 31 May 2020.

14.  The Loan Agreement provides:

14.1.  in clauses 3 that the 1st Respondent shall pay interest at 20% per annum;

14.2.  in clause 4.2 that the Claimant has the right to demand full repayment if *inter alia*:

(a)  the 1st Respondent defaults in repaying the Loan or any part thereof;

(b)  the 1st Respondent is unable to repay the Loan or any outstanding sum; or

(c)  the 1st Respondent fails to comply with the Loan Agreement;

14.3.  in clause 8.2 that if the 1st Respondent fails to repay any principal or interest, he shall pay liquidated damages on the overdue sum(s) at 36% per annum; and

14.4.  in clause 11 that if the 1st Respondent fails to make any repayment, the 2nd to 4th Respondents shall be jointly and severally liable for all sums owed by the 1st Respondent under the Loan Agreement.

15. Despite repeated demands to the 1st to 4th Respondents, including by ASC's letters dated 19 August 2021 and 26 August 2021, none of the Respondents has made any repayment in respect of the Loan, whether on 31 May 2020 or anytime thereafter.

16. Copies of the letters dated 19 August 2021 and 26 August 2021 relating to the Loan are annexed hereto as **Exhibit A-2**.

17. Full particulars of the Claimant's claims will be set out in the Statement of Claim to be filed in due course.

**F.    Relief (Rules §4.3(f))**

18. The Claimant claims against the 1st to 4th Respondents:

    18.1.    payment of all moneys, interest, liquidated damages and sums due to the Claimant under the Loan Agreement;

    18.2.    all costs, expenses, and fees of and associated with these arbitral proceedings; and

    18.3.    such further or consequential relief as the arbitral tribunal considers appropriate.

19. The Claimant reserves all its rights, including the right to amend and/or supplement the relief sought.

**G.    Number of Arbitrators (Rules §4.3(g)-(h))**

20. The parties have not agreed upon the number of arbitrators. The Claimant proposes to refer the present case to a sole arbitrator and await the HKIAC's decision pursuant to Article 6.1 of the Rules.

------- **ENGLISH TRANSLATION** -------

**H.    No Funding Arrangement (Rules §4.3(i))**

21.   The Claimant confirms that no funding agreement has been made.

**I.     Confirmation of Service (Rules §4.3(j))**

22.   Copies of this Notice of Arbitration including its annexures are being communicated simultaneously to the 1st to 4th Respondents by courier service to the addresses stated in paragraphs 5-8 above.

**J.     Other matters**

23.   In accordance with Article 4.4 and Schedule 1 of the Rules, this Notice of Arbitration is accompanied by a cheque payable to "Hong Kong International Arbitration Centre" in the amount of HK$8,000 for payment of the registration fee.

Dated the 6th day of December 2021.

**Anthony Siu & Co.**
Solicitors for the Claimant

## CERTIFICATION OF ACCURACY OF TRANSLATION

I, the undersigned, hereby certify Rule 1:4-4(b) that:

I am not a party to the action and am over 18 years old. I am currently working at the New York office of the Plaintiffs' law firm Reid & Wise LLC. I am fluent in both the Chinese and English languages and am competent to translate between Chinese and English. Chinese is my native language. I have studied English for more than twenty years. I have taken law school courses that were taught in English at William and Mary Law School and obtained JD and LLM degrees therefrom. I have been using both Chinese and English as working languages since September 2012.

This is to certify that, to the best of my ability, the English translation of the Chinese words in the foregoing **Exhibit G** is an accurate and complete translation and is equivalent to its original Chinese version.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Zheng Gao

Dated: December 17, 2021